ESTATE OF EDWARD DOERKEN; STEPHANIE DOERKEN, HENRY HENNIG AND FERDINAND A. SCHUMACHER, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103695.  Promulgated March 31, 1942.

*Robert H. Cunningham, Esq.*, for the petitioners.
*Albert H. Monacelli, Esq.*, for the respondent.

---

810

OPINION.

VAN FOSSAN: The issue before us is whether or not the proceeds of two policies of insurance taken out upon the life of the decedent, Edward Doerken, are includible in his estate.

The statute controlling the situation is section 302 (g) of the Revenue Act of 1926, as amended by section 404 of the Revenue Act of 1934,[1] and the decision turns upon the correct construction of the words "taken out by the decedent upon his own life."

The petitioners contend that the policies in question were not literally taken out by the decedent on his own life; that they were not acquired through expenditure by him; that there was no shifting of interest in the policies as a result of the decedent's death; and that the regulations in effect at the time of the decedent's death were ineffectual to throw the proceeds of the policies into his estate.

The respondent argues that the premiums were paid indirectly by the decedent; that he retained all the legal incidents of ownership in the policies; and that, in any event, the proceeds are includible in the decedent's estate under the provisions of section 302 (a) (footnote 1) because the payment of the premiums by the corporation amounted to gifts, additional compensation, or distributions of corporate earnings, made to him or for his benefit.

We shall first discuss the points raised by the respondent. The first and third are interdependent and will be considered together. The respondent draws inferences from the record which find no sup-

---

[1] SEC. 302. [as amended by section 404 of the Revenue Act of 1934]. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States.

(a) To the extent of the interest therein of the decedent at the time of his death; * * *

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life. * * * *

port therein. He states repeatedly that the decedent was owner of half the stock of the corporation. The decedent owned only 251 shares out of the 1,000 shares of the corporation, which was conducted strictly as a manufacturing company, with a definite and recognized corporate entity. Though decedent's wife owned an almost equal share, there is no fact justifying the disregard of the corporate entity. The respondent assumes that because of such relationship to the corporation the decedent caused the corporation to pay the premiums as gifts, additional compensation, or the distribution of earnings.

There is no intimation in the record that the payment of premiums by the corporation through its directors reflected an intent to make a gift to a stockholder—an illegal act in itself. The corporation neither sought nor obtained a deduction from its gross income by reason of any additional compensation, paid or credited to either the decedent or to Meyer. There is no suggestion that either of those officers or the corporation ever treated or thought of the premium payments as such or that the decedent included them in his own income tax return. The corporation had four stockholders and there is no evidence leading us to disregard this fact.

The respondent's argument that the insurance proceeds are taxable under section 302 (a) as well as under section 302 (g) is answered in *Proutt* v. *Commissioner*, 125 Fed. (2d) 57, as follows:

It would seem that Section 302 (a) of both the 1924 and 1926 Acts refers to real estate and personal property exclusive of life insurance, for the reason that Section 302 (g) deals separately and specifically with such insurance. Therefore, the amendment of Section 302 (a) is not reasonably to be construed as intended to change or affect the meaning of the separate provisions of Section 302 (g). The long life of the section strengthens this inference. "Section 302 (g) first appeared in identical language in the Revenue Act of 1918 as Section 402 (f), 40 Stat. 1057, 1098. It has never been changed." *Helvering* v. *LeGierse*, 312 U. S. 531, 538. Had Congress intended to effectuate a change in the meaning of the section, it could easily have done so by express amendment. Amendment by implication should not be assumed, unless clearly indicated from the context.

We think that section 302 (g) "deals separately and specifically" with taxation of insurance policies and excludes the consideration of the present question under the provisions of section 302 (a). The respondent's inclusion of the proceeds of the insurance policies in the decedent's estate was justified on neither the first nor the third grounds advanced by him.

The respondent asserts that the decedent "possessed", "had", and "reserved" the incidents of ownership in the insurance policies. With this statement we do not agree. The reservation clause relating to the powers to change the beneficiary, to surrender or cancel the policy, to pledge the policy for a loan, or to obtain a loan against the surrender value did remain in the policy in the name of the decedent, but

he was only the nominal owner thereof. A careful study of the facts shows conclusively that the policies were wholly the property of the corporation. It obtained the insurance and paid the premiums. It kept the policies in its custody, thus preventing the decedent from exercising any of the rights reserved to him as the insured, even if he had wished or attempted to do so. The corporation charged the premium payments on its books to expense and meticulously credited itself with the cash surrender value of the policies as it increased yearly.

Thus the corporation's control of the policies and its treatment of them shows that it considered them its sole and exclusive property. For more than 13 years, during which the policies were in force, the decedent exercised none of the "legal incidents of ownership" thereof. The counsel for petitioner states in his brief that the reservation of such rights must have been an error on the insurance agent's part and that the possession of the rights was not brought to the attention of the corporation until after the decedent's death. Whether this was true we do not know and, since the insured is dead, can not ascertain. However, there is ample evidence of record to demonstrate that the policies in reality belonged to the corporation.

If the decedent had attempted to exercise for himself any of the rights nominally held by him, the corporation could have restrained him by proper equity procedure. In fact, it would have been difficult, if not impossible, for him to do so while the policies were held in the corporation's custody.

The fundamental test now recognized to be controlling is the expenditure for the premium. The insurance is not considered to have been "taken out" if no part of the premium or other consideration was paid either directly or indirectly by the insured. Therefore, in the case at bar the payment of the premium by the corporation meets that test, with the resulting effect of excluding the proceeds of the insurance policies from the decedent's estate.

Since the policies were not "taken out by the decedent upon his own life", the provisions of article 27 of Regulations 80, as amended,[2] do

---

[2] ART. 27. *Insurance receivable by other beneficiaries.*—The amount in excess of $40,000 of the aggregate proceeds of all insurance on the decedent's life not receivable by or for the benefit of his estate must be included in his gross estate as follows:

(1) To the extent to which such insurance was taken out by the decedent upon his own life (see article 25) after January 10, 1941, the date of Treasury Decision 5032, and

(2) To the extent to which such insurance was taken out by the decedent upon his own life (see article 25) on or before January 10, 1941, and with respect to which the decedent possessed any of the legal incidents of ownership at any time after such date or, in the case of a decedent dying on or before such date, at the time of his death.

Legal incidents of ownership in the policy include, for example, the right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. The insured possesses a legal incident of ownership if his death is necessary to terminate his interest in the insurance, as for example if the proceeds would become payable to his estate, or payable as he might direct, should the beneficiary predecease him. [T. D. 5032; C. B. 1941–1, p. 429.]

not govern and we need not consider the question of its validity. As stipulated, the value of the stock of Audiger & Meyer Silk Co., owned by the decedent at the time of his death, was $182.69 per share, or a total of $45,855.19. This value will be taken into consideration upon recomputation of the estate tax.

*Decision will be entered under Rule 50.*