243 F.2d 373
 57-1 USTC P 11,684
 John V. FARWELL, III, attorney in fact for John Goodridge,
administrator of the estate of Mark S. Willing, deceased;
Margaret Willing Farwell, Evelyn Pierrepont Willing Chinn,
and Mark S. Willing, Jr., sole heirs at law and next of kin
of Mark S. Willing, deceased, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 11894.
 United States Court of Appeals Seventh Circuit.
 April 4, 1957.
 
 Peter B. Atwood, Chicago, Ill., Walker & Atwood, Chicago, Ill., of counsel, for appellants.
 Charles K. Rice, Asst. Atty. Gen., Mildred L. Seidman, Atty., Dept. of Justice, Washington, D.C., Robert Tieken, U.S. Atty., Chicago, Ill., Lee A. Jackson, Hilbert P. Zarky, Attys., Dept. of Justice, Washington, D.C., for appellee.
 Before LINDLEY and SCHNACKENBERG, Circuit Judges, and WHAM, District judge.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Plaintiffs filed their complaint in the district court seeking recovery of federal estate taxes assessed against and collected from the estate of Mark S. Willing, deceased. He is hereinafter referred to as the decedent. Suitable pleadings were filed and the facts were stipulated. After a hearing, the district court entered judgment for defendant, and plaintiffs have appealed.
 
 
 2
 We now relate the facts.
 
 
 3
 In October 1921, the decedent, then 43 years old, took out ten insurance policies on his life, each in the amount of $10,000. Each policy provided that the face amount was payable to his wife, if she survived him, if not, to his surviving children or, if none survived him, to his executors, administrators, or assigns '(subject to the rights of the Insured as hereinafter reserved to change any beneficiary or mode of settlement)'. Each policy provided:
 
 
 4
 'Change of Beneficiary. Subject to the rights of his assignee if any, the Insured may at any time change any beneficiary by filing written notice thereof at the Home Office of the Company on its form therefor, accompanied by the Policy for suitable endorsement by the Company, such change, when so endorsed, to be effective as of the date of the execution of such notice by the Insured.
 
 
 5
 'Assignments. Originals or duplicates of all assignments are to be filed at the Home Office of the Company. The Company will not be responsible for the validity of any assignment.
 
 
 6
 'Exercise of Privileges. All privileges, benefits and options contained in this Policy may be exercised by the Insured without the consent of any beneficiary.'
 
 
 7
 Decedent made changes of beneficiaries on December 2, 1921, May 3, 1923, March 17, 1926 and May 22, 1929. The 1926 change named[1] trustees under trust agreement dated January 29, 1926, and the 1929 change named John Goodrige and Robert D. McFadon, as trustees under trust agreement dated May 8, 1929: 'or if such trust be terminated, to my executors, administrators or assigns; * * *.'
 
 
 8
 In connection with the change of 1926, decedent, by said trust agreement, assigned, transferred and conveyed to the trustees these ten insurance policies. That instrument provided that, upon the death of decedent, the trustees were to collect the proceeds of the policies, and hold same as a trust fund. The net income of such fund was to be paid in specified parts to his wife and children, with contingent remainders as specified. The decedent reserved the right to change the proportions of income and principal payable to the beneficiaries, except that he could not make any part of the proceeds payable to his estate. He also reserved the right and power 'to alter this agreement in whole or in part by changing the duties, powers and liabilities of the Trustees, provided said Trustees shall consent thereto * * *.'
 
 
 9
 On May 7, 1929, he amended the agreement of 1926 to provide that: 'The entire trust fund shall immediately be assigned, transferred, conveyed and paid by said Trustees to Cora Robinson as sole beneficiary in said insurance trust in place of the beneficiaries * * * originally named in said deed of trust.' On the same day the decedent, the trustees and Cora Robinson agreed 'to cancel, destroy and revoke said insurance trust.' Thereupon, they did 'assign, transfer and convey' the policies to decedent.
 
 
 10
 Decedent made the 1929 change of beneficiary on each of the ten policies by executing a form (varying only as to policy number) reading as follows:[2]
 
 
 11
 'To The Connecticut Mutual Life Insurance Company, Hartford, Conn.
 
 
 12
 By virtue of my right to change any beneficiary in accordance with the terms of Policy No. 447,005, issued by the Connecticut Mutual Life Insurance Company upon my life, and subject to any future exercise of such right by me, and further, subject to the rights of my assignee if any, I direct that, in the event of the maturity of said Policy by my death, any and all sums payable thereunder shall be paid, when due, by said Company to John Goodridge, of Chicago, Illinois, and Robert D. McFadon, of Westmoreland County, Virginia, XXXXX or their successors in trust, as Trustees under a certain trust agreement dated the 8th day of May, 1929: or if such trust be terminated XXXXX to my executors, administrators, or assigns; and I hereby request said Company to make suitable endorsement of this change of beneficiary on said Policy which is presented herewith for such endorsement; such change, when so endorsed, to be effective as of the date of the execution of this notice.
 
 
 13
 Dated at Chicago, Illinois this 8th day of May A.D. 1929.
 
 
 14
 ----------[3]
 
 Witness: ----------'[4]
 
 15
 On May 8, 1929, the decedent executed the above mentioned trust agreement, naming as trustees, Goodridge and McFadon. It recited that 'the Settlor has delivered to the trustees the following described policies of insurance' and 'has caused the death benefits thereunder to be made payable to the Trustees, the proceeds of which policies * * * to be held and distributed as hereinafter set forth.' It did not contain any language of assignment, conveyance or transfer as did the other instruments described above. Another difference between this agreement and that of January 29, 1926 was that, although the beneficiaries under the two trusts were identical, under the 1929 trust the determination of the proportionate share of each was left to the uncontrolled discretion of the trustee, whereas under the prior trust the shares were specifically proportioned. Only one of the trustees was the same. The 1929 trust instrument did not reserve to the decedent the power to alter the duties of the trustees or to change the beneficiaries of the trust.
 
 
 16
 Decedent died on September 15, 1944.
 
 
 17
 There seems to be no dispute between the parties hereto that the provisions of the 1929 trust agreement standing alone would, under Illinois law, constitute an irrevocable trust. Plaintiffs deem it significant that decedent reserved powers of revocation in the 1926 trust agreement but that such powers are not included in the 1929 trust agreement.
 
 
 18
 Defendant takes the position that decedent retained 'incidents of ownership' in the policies and the proceeds of these policies were, therefore, properly included in the decedent's gross estate under section 811(g)(2) of the Internal Revenue Code of 1939. All this plaintiffs dispute.
 
 
 19
 Section 811 of the Internal Revenue Code of 1939[5] provides, in part:
 
 
 20
 ' § 811. Gross estate
 
 
 21
 'The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States--
 
 
 22
 '(a) Decedent's interest. To the extent of the interest therein of the decedent at the time of his death;
 
 
 23
 '(g) Proceeds of life insurance
 
 
 24
 '(1) Receivable by the executor. To the extent of the amount receivable by the executor as insurance under policies upon the life of the decedent.
 
 
 25
 '(2) Receivable by other beneficiaries. To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For the purposes of clause (A) of this paragraph, if the decedent transferred by assignment or otherwise, a policy of insurance, the amount paid directly or indirectly by the decedent shall be reduced by an amount which bears the same ratio to the amount paid directly or indirectly by the decedent as the consideration in money or money's worth received by the decedent for the transfer bears to the value of the policy at the time of the transfer. For the purposes of clause (B) of this paragraph, the term 'incident of ownership' does not include a reversionary interest.'
 
 
 26
 Section 81.27 of Treasury Regulation 105,[6] promulgated under the Internal Revenue Code of 1939, provides, inter alia:
 
 
 27
 '(a) In case of decedent dying after December 31, 1947. (1) The regulations prescribed under this paragraph (except as otherwise indicated in this section) are applicable only in the case of decedents who died after December 31, 1947. * * * In such cases, the amount of the aggregate proceeds of all insurance on the life of the decedent not receivable by or for the benefit of his estate must also be included in his gross estate, as follows: (i) * * *, (ii) Such insurance with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any person.
 
 
 28
 '(b) In case of decedent dying after October 21, 1942, and on or before December 31, 1947. The regulations prescribed under this paragraph (except as otherwise indicated in this section) are applicable only in the case of decedents who died after October 21, 1942, and on or before December 31, 1947. In such cases, the regulations prescribed under paragraph (a) with respect to estates of decedents dying after December 31, 1947, are also applicable (except to the extent inconsistent with this paragraph).'
 
 
 29
 Previous to the execution of the 1929 trust agreement, decedent had repeatedly exercised his right to change the beneficiaries named in the policies. Therefore, he undoubtedly knew in 1929 that he had that right. He exercised it in setting up the trust in question, because to completely accomplish his purpose he again changed the beneficiaries. The document by which he did so expressly made that change subject to any future exercise of that right by him.
 
 
 30
 While decedent could have divested himself of the right to change the beneficiaries by assigning the policies to the trustees, it is clear that the did not do so. While a delivery of policies with an intention thereby to make an assignment thereof may operate as a valid assignment, Franklin Life Insurance Co. v. Falkingham, 7 Cir., 229 F.2d 300, there is no evidence in the record before us showing such an intention. We hold that there was no assignment of the policies by the decedent to the trustees.
 
 
 31
 On the facts in this case, we hold that the delivery of the policies did not deprive decedent of the power to change the beneficiaries. Where insurance policies have been delivered without assignment to the beneficiaries of the policy and the insured has retained a right to change beneficiaries, then he has retained 'incidents of ownership' within the meaning of section 811(g)(2). This is true even though the last named beneficiaries are the trustees of a trust which according to its terms is in effect irrevocable.
 
 
 32
 In creating an operable trust, decedent was required to do two things. First, he had to create the structure of the trust and secondly he had to place some assets (known as the corpus) within that structure. The record shows that he did both of these things. It also shows that the structure which he constructed was, from a legal standpoint, irrevocable by him. Into that trust structure he diverted preexisting insurance policies upon his own life. This he accomplished by exercising his retained right to change the beneficiaries theretofore named by him, designating as new beneficiaries the persons whom he made trustees of the trust. This designation of the trustees as beneficiaries he stipulated was subject to any future exercise by him of that right. The effect of these circumstances was that the trustees, to whom he delivered the policies without an assignment thereof, were beneficiaries who would become entitled to the proceeds of the policies upon the death of the insured if he did not in the meantime exercise his right to again change the beneficiaries. Until decedent's death without another change of beneficiaries, the trustees had an expectancy.[7] On the other hand, if he did make another change of the beneficiaries, the irrevocable trust would not have been destroyed, but his act would have drained the corpus from the reservoir of the trust, and, of course, the empty irrevocable trust would have survived merely as a shell.[8] The decedent's right to change the beneficiaries was unquestionably an incident of ownership. That right was recognized and preserved by one of the documents constituting the subject matter of this case, and therefore the provisions of section 811(g)(2) apply.
 
 
 33
 It is unnecessary to consider other points discussed in the briefs.
 
 
 34
 For the reasons herein set forth, the judgment of the district court is affirmed.
 
 
 35
 Judgment affirmed.
 
 
 
 [1]
 John Goodridge, Margaret McF. Willing, Samuel Topliff and Homer H. Cooper
 
 
 [2]
 The underlining is used by us to indicate parts typewritten in blank portions of a printed form. The series of x's was used by decedent to obliterate certain printed matter in the form
 
 
 [3]
 Signature of decedent
 
 
 [4]
 Signature of Cora Robinson
 
 
 [5]
 26 U.S.C.A. § 811
 
 
 [6]
 Title 26, Parts 80-169, C.F.R. (1949 ed.) p. 37 and 1957 Sup. p. 35
 
 
 [7]
 Delaney v. Delaney, 175 Ill. 187, at page 197, 51 N.E. 961
 
 
 [8]
 Gurnett v. Mutual Life Ins. Co., 356 Ill. 612, at page 623, 191 N.E. 250, at page 254, the court said:
 '* * * Naming new beneficiaries in one or more of the policies would have produced precisely the same effect as the termination of the trust with respect to such policies. * * *'