Henry E. PRUNIER et al., Petitioners,
v.
COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.
No. 5280.

United States Court of Appeals
First Circuit.
Nov. 8, 1957.

George B. Lourie, Boston, Mass., with whom John P. Martin, Boston, Mass., and Saul A. Seder, Worcester, Mass., were on brief, for petitioners.

Charles B. E. Freeman, Attorney, Department of Justice, Washington, D. C., with whom John N. Stull, Acting Asst. Atty. Gen., and Lee A. Jackson and Harry Baum, Attorneys, Department of Justice, Washington, D. C., were on brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

There is now before us a joint petition for review of two decisions of the Tax Court entered on April 12, 1957—one determining that there is a deficiency in income tax of Henry E. Prunier and wife for the taxable year 1950 in the amount of $1,080.88, the other determining that there is a deficiency in income tax of Joseph E. Prunier and wife for the same taxable year in the amount of $1,348.98. The Tax Court (three judges dissenting) thus sustained a determination by the Commissioner that certain premiums paid by the corporation J. S. Prunier & Sons, Inc., on insurance policies on the lives of Henry and Joseph Prunier constituted taxable income to the taxpayers under the general language of § 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a).

Of the 450 shares of stock of J. S. Prunier & Sons, Inc., outstanding, Henry Prunier and his brother Joseph each owned one half or 225 shares until late in 1950, when it was voted at a stockholders' meeting that the two brothers would transfer five shares each to their cousin Irene M. Prunier, clerk of the corporation, who also served as the corporation's bookkeeper. Henry held the offices of president and treasurer, and Joseph was vice-president of the corporation.

As not infrequently happens in these closely held family corporations, the corporate books and records were kept in so sketchy and messy a fashion as to make it difficult to determine what was corporate action and what was the individual action of the two dominant stockholders.

Beginning in 1942 and running up to and including 1950, the brothers took out a total of eight life insurance policies. Four were purchased by Henry on his own life, naming his brother Joseph as beneficiary, in a total face amount of $45,000. Four were taken out by Joseph on his own life, naming his brother Henry as beneficiary, in a total amount of $45,000.

During the taxable year 1950 there was nothing in the terms of the policies, nor in the endorsements thereon, to indicate that the corporation had become their beneficial owner. Some question having been raised by the taxing authorities about this, it appears that at various dates in 1952 (which was subsequent to the tax year in question) endorsements were placed on each of the eight policies naming the corporation J. S. Prunier & Sons, Inc., beneficiary, but inexplicably containing the reservation, in all eight policies, of a right in Henry to change the beneficiary.

From at least as far back as 1946 the corporation has paid the premiums due on the various policies. It was testified on behalf of the taxpayers, and found as a fact by the Tax Court, as follows:

"When the policies were written, Henry and Joseph informed the agent of the substance of the written agreements which the policies were to carry out. They intended that in the event of the death of either the corporation should be the owner of the proceeds of the policies on the life of the deceased party for a single specific purpose, namely, use the proceeds to purchase the stock interest of the deceased party in the corporation at a price agreed upon by them prior to the death of either."

The tax treatment given to these transactions by the corporation was consistent with this found intention of the parties. Thus, in the agreed stipulation of facts the following statements appear:

"The corporation did not claim a deduction for the premiums paid on the above-mentioned insurance policies on its income tax return for the taxable year 1950, but did include the amount thereof in the adjustment made to surplus on Schedule M of its said return as follows:

"'8. Insurance premiums paid on the life of any officer or employee where the corporation is directly or indirectly a beneficiary...$8,081.44'

"Similar adjustments were made by the corporation on its income tax returns for the taxable years 1946 to 1949, inclusive, for the premiums paid on those of the above-mentioned policies in effect during those years."

The aforesaid understanding that the corporation was to become the owner of the policies was first reflected on the books of the corporation, sometime toward the end of 1946, by the following entry in the minute book of the corporation describing a meeting of the directors:

"It is understood and agreed that any policies that Henry E. Prunier has on Joseph E. Prunier and any policies that Joseph E. Prunier has on Henry E. Prunier shall go to the corporation in the event of the death of either of them and this money is

to be used by the corporation to buy out the interest of the party that dies.

"These policies are the ones that the corporation pays the premiums on.

"This will apply to any policies that may be bought in the future.

"(s) Henry E. Prunier
(s) Joseph E. Prunier

"Witness
(s) Irene M. Prunier"

A further corporate record appeared as Petitioners' Exhibit No. 2, reading:

"A special meeting of the stockholders and directors of J. S. Prunier & Sons, Inc., was held at the office of the corporation, on *Thursday, November 2, 1950 at 7:30 P.M.*

"On motion duly made and seconded, the following was proposed and agreed upon and made part of the by-laws:

"It was agreed by and between *Joseph E. Prunier, Vice-President* and *Henry E. Prunier, President* and *Treasurer* and present stockholders that the fair value of the Corporation stock is *One Hundred and Ten Thousand Dollars* ($110,-000.00), and it is their desire that this be the value used should a stockholder sever his connection with the corporation, or in the event of death of either that the corporation will purchase the interest of the deceased party at said value, with the insurance money.

"It was also voted, at said meeting that both Joseph E. and Henry E. Prunier would issue each *five* of their shares to *Irene M. Prunier, Clerk.*

"In witness whereof they have executed this agreement, on this *third* day of *November* 1950.

"(s) Joseph E. Prunier
*Vice-Pres.*
(s) Henry E. Prunier
*President & Treas.*

"Witness
(s) Omer E. Prunier"

Petitioners place their reliance upon the settled ruling that where a corporation is the beneficiary and owner of a policy of insurance on the life of an employee or stockholder, the payment of premiums by the corporation does not constitute income to the insured individual. Casale v. Commissioner, 2 Cir., 1957, 247 F.2d 440. See Emeloid Co., Inc., v. Commissioner, 3 Cir., 1951, 189 F.2d 230; Lewis v. O'Malley, 8 Cir., 1944, 140 F.2d 735.

On the other hand, the Commissioner thinks the present case falls within the equally settled ruling that where a corporate employee or stockholder, or someone related to him, is beneficiary, and not the corporation, on a policy of life insurance on such employee or stockholder, payment of the premiums on such policy by the corporation constitutes income to the insured individual. Paramount-Richards Theatres, Inc. v. Commissioner, 5 Cir., 1946, 153 F.2d 602; Yuengling v. Commissioner, 3 Cir., 1934, 69 F.2d 971; Paul J. Bonwit, 1935, 33 B.T.A. 507, reversed in part, Commissioner of Internal Revenue v. Bonwit, 2 Cir., 1937, 87 F.2d 764. Cf. Burnet v. Wells, 1933, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439.

We think the present case is more nearly like the type of case relied upon by petitioners. Despite the informality of the transactions, it seems to us that, in view of the facts in the record and of the findings by the Tax Court, the corporation would have been held to be the beneficial owner of the eight insurance policies under controlling Massachusetts law, and thus could have obtained the help of a court of equity to recover the proceeds of the insurance policies if one of the brothers had died in 1950. See Brierly v. Equitable Aid Union, 1898, 170 Mass. 218, 48 N.E. 1090; Massachusetts Linotyping Corp. v. Fielding, 1942, 312 Mass. 147, 43 N.E.2d 521; Handrahan v. Moore, 1955, 332 Mass. 300, 124 N.E.2d 808. We suspect also that in that event the corporation, on some theory of "ratification" or of "adoption", would have been held contractually

bound to apply the proceeds of the policies to buy out the stock interest of the deceased stockholder, and that the deceased stockholder's legal representative would have been contractually bound to sell. See Hurley v. Ornsteen, 1942, 311 Mass. 477; Murray v. C. N. Nelson Lumber Co., 1887, 143 Mass. 250, 9 N.E. 634; Lyndeborough Glass Co. v. Massachusetts Glass Co., 1873, 111 Mass. 315; Sherman v. Fitch, 1867, 98 Mass. 59.

Whether the corporation would have been legally obliged to continue paying the premiums in 1950 we do not need to say. The fact is that the corporation did pay the premiums. Also we do not have to decide what would have been the respective legal obligations of the parties, and what would have been the tax consequences, if one of the insured brothers had died in 1950. The fact is that neither brother died in 1950, and so far as appears both are still alive. It is sufficient for the purposes of the present case to say that neither brother realized any taxable gain in 1950 from the payment of the life insurance premiums by the corporation.

We do not understand that the majority of the Tax Court reached the conclusion they did on any notion of "disregarding the corporate fiction". Human beings take advantage of laws permitting incorporation because they think it will be economically advantageous to them individually. That is so whether the corporation is a "closely held" company owned by two stockholders, or one having two thousand stockholders. In a loose manner of speaking, it can be said that any corporate gain is a benefit, indirectly, to the stockholders, so that if a corporation becomes the beneficial owner of insurance policies, the stockholders receive the benefit thereof. Of course this argument proves too much, for it would lead to the conclusion that profits made by a corporation in its business are automatically taxable income to the stockholders. This is contrary to the taxation scheme of the Internal Revenue Code. And the government is only contending in this case that

it was the payment of premiums by the corporation which constituted income to the insured employees and stockholders, which in itself is a recognition of the corporation as a separate legal entity.

The gist of the Tax Court's argument is contained in the following excerpt from the majority opinion:

"In view of what has been said above, it appears that if Joseph or Henry had died during the taxable year, the corporation would not have been enriched by receiving the proceeds from insurance policies on the life of the deceased and using them to purchase stock he had owned in the corporation. The corporation's indebtedness to creditors would have remained undiminished, and while the corporation would have eliminated at least the greater part of the deceased's ownership interest in it, represented by his stock, the proportional interest of the surviving stockholder, or stockholders, thereby would have been greatly increased. In this situation and since the record does not otherwise indicate any benefit which might flow to the corporation from the purchase of a deceased insured's stock interest, we conclude that during the taxable year the corporation was neither the beneficial owner nor the beneficiary of the insurance policies on the lives of Joseph and Henry involved here."

Certainly the fact that the corporation may have been contractually bound to apply any proceeds of the policies, had they matured in 1950, to buy out the stock interest of a deceased stockholder, does not mean that the corporation would not have been "enriched" by collecting the face amount of the policies. All that would then have been involved would have been a change in the form of the assets from cash to treasury stock. We have hitherto pointed out the limited utility of the concept of corporate purpose as distinguished from stockholder purpose. See Lewis v. Commissioner, 1 Cir., 1949, 176 F.2d 646, 649–650. But

if it were necessary to look for a corporate business purpose in the present case, we could refer to the arguments in Mannheimer & Friedman, "Stock-Retirement Agreements," 28 Taxes 423, 425 (1950), as follows:

"Even while the decedent is still alive, the agreement and insurance benefit the corporation because they tend to stabilize the corporation's business. If the bank knows about the agreement, it may well be inclined to extend credit more liberally to the corporation because the possibility of inexperienced shareholders injecting themselves into the management is eliminated. If the key employees are informed of the agreement, it will be an inducement to them to remain with the corporation because they realize that the continuation of the business in the hands of the survivor is assured— and with it their jobs.

"If there is no stock-retirement agreement when the decedent dies, often his family will ask a high price for his stock, or demand dividends without regard to the needs of the corporation, or even press for dissolution. So far as the survivor is concerned, he may very well be unwilling to work indirectly for the benefit of his former 'partner's' family or directly with the second husband of his former 'partner's' widow."

In the present case the government has not made any real effort to controvert the argument that under the Massachusetts decisions a court of equity would treat the corporation as the equitable owner of the policies of insurance. That being so, and having in mind the statutory scheme whereby the corporation J. S. Prunier & Sons, Inc., is dealt with as a separate legal entity and a separate taxable unit, and disregarding the loose sense in which it could be said that a benefit to J. S. Prunier & Sons, Inc., is a benefit to its controlling stockholders, it is sufficiently evident that the payment of premiums by the corporation in 1950 did not constitute, in that taxable year, reportable income to Henry and Joseph Prunier. See generally, Casale v. Commissioner, 2 Cir., 1957, 247 F.2d 440. What will happen when one of the brothers dies is not before us.

A judgment will be entered vacating the decisions of the Tax Court and remanding the case to that Court for further proceedings not inconsistent with this opinion.