**ESTATE of Grant H. PIGGOTT, Deceased, David S. Piggott and Albert F. Piggott, Co-Administrators, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15457.**

United States Court of Appeals
Sixth Circuit.

Feb. 4, 1965.

---

John L. King, Detroit Mich. (Berry, Moorman & King, Detroit, Mich., on the brief), for petitioners.

Edward B. Greensfelder, Jr., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Edward B. Greensfelder, Jr., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before MILLER, O'SULLIVAN and PHILLIPS, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

This case involves the liability of the estate of Grant H. Piggott, deceased, under the Federal Estate Tax with respect to the proceeds of an insurance policy on his life payable to his corporate employer, who paid the annual premiums called for by the policy and who had possession of the policy at the time of the decedent's death. The Tax Court held the proceeds were includable in the gross estate of the decedent for Federal Estate Tax purposes.

Except for one major fact, hereinafter discussed, there is no material dispute about the facts.

J. T. Wing & Company hereinafter referred to as the company was incorporated under the laws of Michigan on May 1, 1936. Grant H. Piggott, sometimes hereinafter referred to as the decedent, was General Manager of the business, and one of the incorporators. In 1940 he was President and a Director of the company and remained in such position until December 31, 1956, at which time he resigned as President and was elected Chairman of the Board. The company was engaged in the sale of factory and contractors' supplies, such as pliers and cutting tools. The decedent and the immediate members of his family were the largest stockholders of the company. H. A. Wentworth, who was employed by the company at the time of its incorporation, owned 250 shares of its common stock, constituting approximately 11% of the issued and outstanding voting common stock. He was in no way related to the decedent or any member or his family. From 1938 to 1952 he was Secretary of the corporation and from 1938 to 1957 he was Treasurer. He retired in 1957. During the entire period of his employment he was a Director of the corporation.

In 1936 the company borrowed a large sum of money from the Reconstruction Finance Corporation. Mr. Sutcliffe, who was assigned as the Finance Corporation's loan officer to administer the loan, voluntarily recommended that insurance be taken out on Grant H. Piggott's life for the benefit of the company, so that if anything happened to him the company would have capital to reorganize or to put someone else in his place. On December 31, 1941, the company owed the Finance Corporation $59,611.33.

On October 31, 1940, Grant H. Piggott applied for life insurance to the Home Life Insurance Company and policy No. 480812 insuring his life in the amount of $50,000.00 was issued to him on November 25, 1940. On the application for insurance Piggott designated his wife as beneficiary, if living, otherwise to his children equally. The application included the following question. "Do you reserve the right to change the beneficiary?" The word "Yes" was written in the space provided for the answer.

A second application for insurance dated November 25, 1940, specifically referred to the previous application. This application designated his wife as beneficiary, if living, otherwise in equal shares to any children then living. It also included the question, "Do you reserve the right to change the beneficiary?" The word "Yes" was typewritten in the space provided for the answer.

The policy as issued designated as beneficiary his wife, if living, otherwise in equal shares to any children then living. It also contained the following provision:

"The right of change of beneficiary in accordance with the provisions of the Policy is reserved to the Insured. If no designated beneficiary survives the Insured the proceeds at death of the Insured shall be paid to the executors or adminis-

trators of the estate of the Insured unless otherwise herein provided."

At the time this policy was issued the decedent was 49 years old.

In payment of the first premium under the policy Piggott gave to the insurance company the company's check in the amount of $250.00 and executed his promissory note in the amount of $1,947.50. The amount of the check was charged against Piggott's drawing account. On March 31, 1941, the sum of $250.00 was credited to Piggott's drawing account. All premiums under the policy during the term of the policy including the final premium paid in 1956, were paid by the company. These totaled $34,700.00. Grant H. Piggott died July 26, 1957.

On December 13, 1940, Piggott executed and delivered to the life insurance company a formal revocation of his previous designations of beneficiary under the policy and requested the insurance company to pay the proceeds due at his death to the J. T. Wing Company, its successors or assigns, as beneficiary. The designation of corporate beneficiary contained this statement:

"I hereby reserve the right to designate a new beneficiary or beneficiaries in accordance with the provisions contained in said Policy."

On December 17, 1940, the policy was endorsed "Proceeds payable in one sum to the J. T. Wing Company, a corporation of the State of Michigan, its successors or assigns." It was thereafter noticed that the name of the company was incorrectly written, and on January 4, 1950, the policy was endorsed "Notice received that the correct name of the beneficiary is J. T. Wing & Company."

A special meeting of the Directors of the company was held on February 14, 1941, at which were present Grant H. Piggott, his son, David S. Piggott, and H. A. Wentworth. In addition to other matters considered and passed upon by the Board, the minutes contained the following statement:

"Moved by Grant H. Piggott and seconded by David S. Piggott that premiums on Home Life Insurance Policy No. 480812 on the life of Grant H. Piggott for $50,000.00, with annual premium of $2,197.50, be paid by J. T. Wing Company as this company has been endorsed upon the policy as beneficiary. Carried, Affirmative votes being Grant H. Piggott and David S. Piggott, H. A. Wentworth not voting."

David S. Piggott, the son, testified that at the meeting his father advised the Board that the Reconstruction Finance Corporation's loan officer suggested that he take out the policy on his life and that he thought the company should pay for it because it was to protect the company. He also testified that Mr. Wentworth was worried by the fact the company was still pretty badly in debt and was still having a hard time meeting all of its bills, and that he didn't think that the company "needed this necessary expense" at that time.

For the years 1942 to 1956 inclusive, the books and records and the balance sheets of the company showed the cash surrender value of the policy in question, which was carried as an asset of the company. For the year 1942 it was $1,613.00. It increased in varying amounts annually thereafter and was shown in 1956 to be $20,269.50. The increases in the cash surrender values were credited against premiums paid on the policy in the years in which earned. Mr. Bower, a certified public accountant for 31 years, testified that the cash surrender value of an insurance policy that was not owned by a corporation should not and would not be listed as an asset.

On November 2, 1949, the company renewed its promissory notes with the Manufacturers National Bank of Detroit, Michigan, in the amount of $25,000.00. As collateral therefor, accounts receivable, inventory, and the policy on decedent's life were pledged. The instrument of assignment delivered to the life insurance company was attached to the

policy in the form of an endorsement. It was executed by the decedent on the line designated for the signature of the insured. Following his signature is the capital letter "P," which the Tax Court found represented the word "President." The instrument was also executed by "J. T. Wing & Company" and "The J. T. Wing Company" as beneficiary, in each instance by H. A. Wentworth, Secy-Treas. The instrument was acknowledged by the decedent individually and by the company through its Secretary and Treasurer. The policy was delivered to the bank and remained in its possession as security for the company's loan obligation until the payment of the proceeds thereof following decedent's death. The instrument of assignment contained this provision:

"This assignment shall not affect any right of the insured or others to change the beneficiary or elect optional methods of settlement but the rights of the present beneficiary or any hereafter named, and of any present or future method of settlement shall in all respects be subject to the rights of said bank and shall be limited to and affect only such proceeds of said policy as remain after all claims of said bank shall have been satisfied."

Upon the death of the decedent the death benefit and post-mortem dividends due under the policy were paid by the insurance company as follows:

"The Manufacturers National
   Bank of Detroit ......$  9,132.00
J. T. Wing & Company ...  41,171.50
 
     Total  .......... $50,303.50"

None of the proceeds paid by the insurance company to the company was used to redeem the stock of the company owned by the decedent.

David S. Piggott and Albert F. Piggott qualified as Co-Administrators of the estate of Grant H. Piggott, deceased, and are hereinafter referred to as the taxpayers. They filed a Federal Estate Tax return for the decedent's estate, which included the following statement:

"Home Life Insurance Company policy on life of Grant H. Piggott purchased and owned as business insurance by J. T. Wing & Company and paid to J. T. Wing & Company, and not included in this return for said reason. Amount of policy, $50,000.-00."

The Commissioner of Internal Revenue held that the proceeds of the insurance policy were includable in the decedent's estate for Federal Estate Tax purposes and made a deficiency assessment. The taxpayers sought a redetermination in the Tax Court of the assessment. The Tax Court affirmed the Commissioner's determination. The taxpayers seek a review by this Court of the Tax Court's decision.

Section 2042, Title 26, United States Code, Revenue Act of 1954, dealing with taxation under the Federal Estate Tax of the proceeds of life insurance upon the life of a decedent, provides that the value of the gross estate of a decedent shall include (under subsection 1) the amount receivable by the executor as insurance under policies on the life of the decedent, and (under subsection 2 thereof) "the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death *any of the incidents of ownership,* exercisable either alone or in connection with any other person." (Emphasis added.)

The Commissioner contends that the proceeds of the insurance policy in question in this case, although payable to the company, were includable in the gross estate of the decedent because his retention of the right to change the beneficiary was an incident of ownership under the provisions of Section 2042(2), Title 26, United States Code. Fernandez v. Wiener, 326 U.S. 340, 362–363, 66 S.Ct. 178, 90 L.Ed. 116; Brown v. Commissioner, 95 F.2d 184, 187, C.A. 6th, cert. denied, 305 U.S. 644, 59 S.Ct. 147, 83 L.Ed. 416, rehearing denied, 305 U.S. 674, 59 S.Ct. 242, 83 L.Ed. 436.

The taxpayers contend that although technically the right to change the bene-

ficiary, as well as such other rights as to surrender or cash the policy and to obtain a loan against the surrender value of the policy, remained in the policy in favor of the decedent, the decedent, under all of the facts in the case, was only the nominal owner thereof, the policy in reality was wholly the property of the corporate beneficiary, and that it was the clear intent of the parties that this be so, although the provisions of the policy had not been changed to actually provide for that result. They contend that under such circumstances there was actually no retention of the incidents of ownership and Section 2042(2) is not applicable. Estate of Edward Doerken v. Commissioner, 46 B.T.A. 809 (1942).

Section 2042(2) of the Revenue Code of 1954 is the applicable statute. It makes the insurance proceeds taxable to the decedent's estate if "the decedent possessed at his death any of the incidents of ownership." Although it does not expressly provide that the power to change the beneficiary is an incident of ownership, Section 20.2042–1 of the Regulations promulgated thereunder defines the term "incidents of ownership" as follows:

> "For purposes of this paragraph, the term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. Similarly, the term includes a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder."

The cases have uniformly held that the power to change the beneficiary is an incident of ownership. Brown v. Commissioner, supra, 95 F.2d 184, 187, C.A. 6th, cert. denied, 305 U.S. 644, 59 S.Ct. 147, rehearing denied, 305 U.S. 674, 59 S.Ct. 242; Fried v. Granger, 105 F.Supp. 564, 567, W.D.Pa., affirmed, 202 F.2d 150, C.A. 3rd; Hall v. Wheeler, 174 F.Supp. 418, 421, S.D. Maine; Farwell v. United States, 243 F.2d 373, 377–378, C.A. 7th; Singer v. Shaughnessy, 198 F.2d 178, 181, C.A. 2nd; Estate of Michael Collino v. Commissioner, 25 T.C. 1026, 1033.

Although these cases arose under the provisions of Internal Revenue Codes which were in effect prior to the Internal Revenue Code of 1954, such as Section 302(g) of the Revenue Act of 1926, as amended in 1934, and Section 811(g) (2) (b) of the Internal Revenue Code of 1939, we think that for our present purposes this is immaterial. As shown by the various statutes and regulations thereunder the "incidents of ownership" test has not always been the exclusive test of inclusion. Other tests, under previous Internal Revenue Codes, have been whether the insurance had been "taken out by the decedent upon his own life" and to what extent, if any, the decedent paid the premiums. Although these tests were not included in the Revenue Code of 1954, that Act and the regulations thereunder made no change in the concept of "incidents of ownership" as they existed under the earlier statutes and regulations thereunder. Accordingly, we are of the view that the rulings above referred to are applicable to our present question even though they were not made under the existing provisions of the Revenue Act of 1954.

The taxpayers concede that it is the general rule that the power to change the beneficiary is an incident of ownership, but strongly urge upon us an exception thereto as recognized and applied in Estate of Edward Doerken v. Commissioner, supra, 46 B.T.A. 809 (1942) and National Metropolitan Bank of Washington v. United States, 87 F.Supp. 773, 775–776, 115 Ct.Cl. 396 (1950). See also: Edward D. Lacey v. Commissioner, 41 T.C. 329, and Prunier v. Commissioner, 248 F.2d 818, 73 A.L.R.2d 702, C.A. 1st.

It is their contention that the intent of the parties is controlling and if it clearly appears that the insured intended to transfer all rights under the policy to the beneficiary and to retain no incident of ownership, such intent will control over the wording of the policy to the contrary. This is the underlying theory leading to the decisions in favor of the taxpayer in both the Edward Doerken case, supra, and the National Metropolitan Bank case, supra. It was also recognized as being an exception to the general rule in Estate of Michael Collino v. Commissioner, supra, 25 T.C. 1026, 1033–1034, and Hall v. Wheeler, supra, 174 F.Supp. 418, 421 S.D. Maine, although in both of those cases the Court ruled that such an intent had not been proved and, consequently, held the insurance proceeds taxable.

The facts in the Edward Doerken case, supra, are very similar to the facts in the present case and the ruling furnishes strong support for the taxpayers' contention. In that case the Tax Court held that the proceeds of insurance policies upon the life of the decedent payable to his corporate employer, who paid the premiums and had possession of the policies, were not taxable to the decedent's estate, even though the right to change the beneficiary was retained by the insured under the provisions of the policy. That case arose under the Internal Revenue Act of 1926, as amended in 1934. In distinguishing that case from the present one the Tax Court expressed the opinion that since the advent of the 1954 Code, that case had no application. As hereinabove explained, we do not agree with that view of the case. However, the Tax Court also stated that in Doerken it was found as a fact that the incidents of ownership were nominal only and impossible of exercise by the insured, which was not the factual situation in the present case. The Tax Court recognized that its ruling could turn upon the question of decedent's intent, which presented to the Court a clear question of fact with the burden of proof, which in this case was one of extreme difficulty because of the absence of the decedent as a witness, being upon the tax-payer. With this view of the case, we agree.

Whether the decedent intended to divest himself of all incidents of ownership is a question of fact. Fried v. Granger, supra, 105 F.Supp. 564, 567, W.D. Pa. affirmed, 202 F.2d 150, C.A. 3rd; Hall v. Wheeler, supra, 174 F.Supp. 418, 421, S.D.Maine; Estate of Michael Collino. v. Commissioner, supra, 25 T.C. 1026, 1034.

Although the Tax Court did not include in its formal findings of fact a specific finding on the question of decedent's intent, it did make a finding that at the date of his death the decedent possessed all of the incidents of ownership pertaining to the policy in question. It also held that the taxpayer had not sustained its burden of proof, which, together with its discussion of the intention of the insured, clearly indicates a finding on this factual issue adverse to the taxpayer. In that respect this case is different from the factual situation in the Edward Doerken case, supra, and presents a different issue on this review. If the finding is not clearly erroneous, the judgment must be affirmed. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Commissioner of Internal Revenue v. Consolidated Premium Iron Ores, Ltd., 265 F.2d 320, 326, C.A. 6th.

In support of the contention that it was the intent of the decedent that the company own the policy, the taxpayers rely upon the facts that the company paid all the premiums and had possession of the policy. This, however, is not conclusive. Fried v. Granger, supra, 105 F. Supp. 564, 567, W.D.Pa., affirmed, 202 F.2d 150 C.A. 3rd; Hall v. Wheeler, supra, 174 F.Supp. 418, 421 S.D. Maine; Estate of Michael Collino v. Commissioner, supra, 25 T.C. 1026, 1034.

Reliance is also placed upon the testimony of David S. Piggott and Harold A. Wentworth that, following the meeting of the Board of Directors on February 14, 1941, at which the company agreed to pay the premiums, it was their

"understanding" that the company "owned the policy." But David S. Piggott explained his testimony by further stating, "Anybody that paid the premium and was also beneficiary owned the policy." Mr. Wentworth also explained his testimony by saying, "At that time he proposed that the company take over the policy and pay the premiums. I suppose we'd own the policy." But, as pointed out above, these legal conclusions by witnesses who were not lawyers and were not in the insurance business were not sound. Such conclusions, as well as the statement attributed to the decedent that he wanted the company to own the policy, are the expressions of a layman, which have very little weight in determining the issue presented by this case. MacManus' Estate v. Commissioner, 172 F.2d 697, 700–701, C.A. 6th, cert. denied, 337 U.S. 938, 69 S.Ct. 1513, 93 L.Ed 1743.

█ We think that the treatment by the bookkeepers and accountants in carrying on the books of the company as an asset of the company the cash surrender value of the policy can also be considered as the result of a misconception of either the facts or the law. There is no evidence that in so acting they gave any consideration to the fact that the decedent retained the power to change the beneficiary. It was apparently assumed, notwithstanding the uncontradicted documentary evidence to the contrary, that the decedent did not have the power to change the beneficiary. The way in which the cash surrender value was handled for bookkeeping purposes was based upon what it was thought the facts were. It does not prove that the facts were actually what they were assumed to be. The Tax Court's disapproval of the way in which the company treated the cash surrender value results in no prejudice to the company, which, as beneficiary, at the death of the taxpayer received the full face value of the policy.

In support of the Tax Court's finding, there is the express statement in both applications that the decedent had the power to change of beneficiary, the policy itself so provided, the change of beneficiary from the decedent's wife to the company expressly reserved the right "to designate a new beneficiary," and the assignment of the policy to the bank in November 1949, some nine years after the company was named the beneficiary, expressly provided that the assignment did not affect the right of the insured to change the beneficiary subject to the rights of the bank. This assignment was executed and acknowledged by the decedent individually as well as by the company.

It is further pointed out that the action taken by the Board of Directors of the company on February 14, 1941, agreeing to pay the annual premiums gives as the only reason therefor the fact that the company had been named beneficiary thereunder. It referred to no statement or agreement by him that the beneficiary would not be changed in the future. If the beneficiary had been changed in later years, the company could have discontinued the payment of the premiums. It would have received insurance protection during the years in which the premiums were paid.

Mr. Wentworth testified that the decedent was a good businessman, an alert businessman, a smart businessman, and as having a keen sense of awareness. Notwithstanding his limited educational training, the record shows he was a successful businessman. This justifies the inference that he was not unaware of the provisions and the legal effect thereof of the various documents which he executed, each reserving to him the right to change the beneficiary.

█ The taxpayers make the further contention that as a practical matter it was impossible for the decedent to have changed the beneficiary because of the physical custody of the policy by the bank. We do not think that this contention is supported by the authorities. Detroit Life Insurance Co. v. Linsenmier, 241 Mich. 608, 217 N.W. 919; Chrysler Corporation v. Disich, 295 Mich. 261, 265, 294 N.W. 673; Farwell v. United States, supra, 243 F.2d 373, 377, C.A. 7th.

We are of the opinion that the findings of fact by the Tax Court are not clearly erroneous and that the decision, based upon them, should be affirmed.