Hazel B. COCKRILL, and First American National Bank of Nashville, Executors of the Estate of William C. Cockrill, Deceased,

v.

James A. O'HARA, District Director of Internal Revenue.

Civ. No. 4104.

United States District Court
M. D. Tennessee,
Nashville Division.
May 15, 1969.

Larimore Burton, Jr., and Andrew Ewing, Nashville, Tenn., for plaintiffs.

Charles H. Anderson, U. S. Atty., Middle Dist. of Tenn., Nashville, Tenn., for defendant.

## ORDER

FRANK GRAY, Jr., District Judge.

This is an action for refund of federal estate taxes which are alleged to have been erroneously assessed and collected. The plaintiffs are the executors of the estate of William C. Cockrill (hereinafter sometimes referred to as the decedent), who died in August, 1960, and the defendant is the District Director of the Internal Revenue Service. The cause in now before the court on defendant's motion for summary judgment.

At the time of his death there were in force three policies of insurance on the life of the decedent, the proceeds of which were payable to the Tennessee Lumber Company, Inc., a Tennessee corporation. Two of these policies were issued by the Equitable Life Assurance Society,[1] and the third was issued by the Prudential Insurance Company of America.[2] The premiums on all the policies were paid by the Tennessee Lumber Company of which the decedent was president and sole stockholder.

On November 21, 1961, the plaintiffs filed an estate tax return for the estate of the decedent, indicating a gross taxable estate of $296,589.76, and estate tax liability in the amount of $75,197.85. The proceeds of the life insurance policies in question, amounting to $92,205.00, were not included in the gross estate. After an audit of the decedent's estate tax return, the defendant assessed a deficiency against the estate on the ground that the three policies should have been included in the decedent's gross estate under § 2042 of the Internal Revenue Code of 1954, 26 U.S.C. § 2042. Plaintiffs paid the deficiency assessment on December 17, 1963, and thereafter filed a claim for refund with the defendant, which was disallowed on January 22, 1965. Upon rejection of the refund claim, this action was commenced.

---

1. The Equitable Life Assurance Society policies are: number 13,516,063, issued in 1951 for the face amount of $40,000; and number 14,485,070, issued in 1954 in the face amount of $30,000.

2. The Prudential Insurance Company policy is: number 13,747,159, in the face amount of $15,000.

Section 2042(2) of the Internal Revenue Code of 1954 makes the proceeds of life insurance policies taxable to the decedent's estate if the decedent "possessed at his death any of the incidents of ownership" of such policies "exercisable either alone or in conjunction with any other person." The regulations promulgated under this section define the term "incidents of ownership" as follows:

"(2) For purposes of this paragraph, the term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. Similarly, the term includes the power to change the beneficiary reserved to a corporation of which the decedent is the sole stockholder." Treas.Reg. § 20.2042–1(c)(2).

Defendant contends that the facts which are now before the court, contained in the pleadings, defendant's request for admissions and interrogatories, plaintiffs' answers thereto, and the various exhibits which have been filed, establish as a matter of law that the decedent possessed at his death incidents of ownership in the three policies involved herein. Thus, the defendant maintains that there is no genuine issue of material fact, and that he is entitled to summary judgment.

With respect to the two policies issued by the Equitable Life Assurance Society, defendant relies on the actual terms of the policies which designated the decedent as the owner of the policies and granted him the following powers: (1) the power to assign his rights and powers in the policies; (2) the power to revoke any assignment of the policies; (3) the power to change the beneficiaries of the policies; (4) the power to change the form, kind, or plan of insurance; (5) the right to exercise any one of several options with regard to the payment or use of dividends; (6) the right to convert the policies to participating fully paid-up whole life insurance or to endowments; (7) the power to borrow the loan value of the policy; (8) the power to elect any one of various options in the event of surrender or lapse of the policies; (9) the right to elect the manner in which the beneficiaries would be paid; and (10) the power to revoke or change the election as to the manner in which the beneficiaries would be paid.

Plaintiffs do not deny that the decedent possessed these powers under the Equitable policies. They contend, however, that, in spite of these facts, there remains a genuine issue of material fact as to whether the decedent possessed incidents of ownership in the policies at his death. In support of their contention plaintiffs rely on Estate of Doerken, 46 B.T.A. 809 (1942) and Estate of Piggott v. Commissioner of Internal Revenue, 340 F.2d 829 (6th Cir. 1965).

The *Doerken* case was decided under § 302(g) of the Revenue Act of 1926. That statute taxed, with certain limitations, "insurance under policies taken out by the decedent upon his own life." It did not contain any reference to incidents of ownership, although the term "legal incidents of ownership" did appear in the regulations. In *Doerken*, the Board of Tax Appeals held that proceeds of life insurance payable to decedent's corporate employer were not includible in decedent's gross estate, even though he retained rights in the policies. The Board reasoned that the intent of the parties is controlling, and that where it clearly appears that the insured intended to transfer all rights under the policy to the beneficiary, such intent will control over the wording of the policy to the contrary. The Board concluded that, since the corporation had obtained the

insurance and paid all the premiums thereon, it was intended that the corporation own the policies, and, thus, the insurance had not been "taken out" by the decedent. Although the decedent did retain rights under the policies, he was found to be only the nominal owner thereof.

The *Piggott* case, decided in this Circuit under the present § 2042, also involved life insurance proceeds payable to the decedent's corporate employer. Although the corporation had paid the policy premiums, carried the amount of the policy's cash surrender value on its books as an asset, and on one occasion assigned the policy as collateral for a corporate debt, the decedent retained certain rights in the policy, among them the right to change the beneficiary. In seeking to avoid payment of estate tax on the policy proceeds the administrators of the decedent's estate relied on the *Doerken* case, contending that the intent of the parties was controlling, and that, since it clearly appeared that the decedent intended to transfer all rights under the policy to the beneficiary and to retain no incidents of ownership, this intent should control, notwithstanding the wording of the policy to the contrary. The Government contended that the *Doerken* rationale was obsolete under the 1954 Code, since § 2042 is concerned with whether the decedent possessed incidents of ownership in the insurance policy rather than whether the decedent had taken out the policy.

The court held that the proceeds of the policy were taxable to the estate of the decedent. However, by way of dictum, the court adopted the reasoning of the *Doerken* case, stating that the decedent's intent with respect to the ownership of the policy could be controlling in determining whether he possessed any incidents of ownership at his death, and that the determination of the decedent's intent was a question of fact. The court concluded that the Tax Court had not erred in its finding that the administrators of the decedent's estate had failed to establish that the decedent intended to divest himself of incidents of ownership in the policy.

Relying on the Sixth Circuit's approval of the *Doerken* reasoning, plaintiffs here contend that the determination of the intent of William C. Cockrill with respect to the ownership of the two Equitable policies presents a genuine question of material fact which cannot be resolved except at trial of the case, and that, therefore, the defendant's motion for summary judgment should be denied.

The defendant maintains, on the other hand, that the rights granted the decedent by the express provisions of the policies are determinative of whether the decedent possessed incidents of ownership in the policies at his death, rather than evidence of the decedent's intent with respect to the policies. In support of this position, the defendant relies on the Supreme Court's decision in Commissioner of Internal Revenue v. Estate of Noel, 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965), decided only a few weeks after the Sixth Circuit's decision in *Piggott*.[3]

*Noel* involved two airline flight insurance policies purchased on the decedent's life by his wife, who was the beneficiary under the policies, shortly before he was killed in a plane crash. The decedent had instructed the sales clerk to give the policies to his wife, stating that the policies belonged to her and that he no longer had anything to do with them. The policies granted the decedent the power to assign the policies and to change the beneficiary without the wife's consent. After holding these policies to be life insurance within the meaning of § 2042, the Court considered the executor's arguments that (1) the policies belonged to the decedent's wife, since she had purchased them, and (2) that decedent had divested himself of incidents of ownership in the policies by making a

3. The Piggott case was decided on February 4, 1965, and the Noel case was decided on April 29, 1965.

gift of them to his wife.[4] The Court held the proceeds taxable to the decedent's estate, answering both arguments by reference to the express terms of the policies. Since the policies granted the decedent the right to change the beneficiary or to assign the policy, the wife's claim of unconditional ownership was held to be untenable, and the gift contention was overcome by the policy provision requiring a written endorsement on each policy to effect an assignment.

[1] Upon consideration of these precedents, the court is of the opinion that the *Doerken* reasoning, approved by the Sixth Circuit in the *Piggott* case has been superseded by the Supreme Court's decision in *Noel*. The Supreme Court's summary rejection of clear evidence of the decedent's intent in favor of the express terms of the insurance contract can only be interpreted, in this court's opinion, as a holding that so-called "policy facts" (reservation of rights in the policy) cannot be rebutted by reference to "intent facts" or external circumstances. The cases which have considered this question since the *Noel* decision are in agreement with this interpretation. United States v. Rhode Island Hospital Trust Co., 355 F.2d 7 (1st Cir. 1966); Kearns v. United States, 399 F.2d 226, 185 Ct.Cl. 227 (1968).

Moreover, the plaintiffs have not presented any evidence of external circumstances to the court which would indicate that an exception to this interpretation of the *Noel* case is warranted here. They have submitted only an affidavit in which they state that the facts tending to support their case cannot be properly and effectively submitted except by oral testimony, or perhaps by deposition, and a brief in which they rely solely on the *Doerken* and *Piggott* cases. Therefore, with respect to the two Equitable Life Assurance policies, the court is of the opinion that there is no genuine issue of material fact presented in the record, and that the defendant is entitled to summary judgment as a matter of law.

With regard to the Prudential policy, it is undisputed that the incidents of ownership in the policy, including the power to change the beneficiary, were possessed from the date of the issuance of the policy by the Tennessee Lumber Company, Inc. It also appears from the plaintiffs' admissions that the decedent was at all relevant times the president and sole stockholder of that company. By his motion for summary judgment, the defendant contends that, since the decedent was the sole stockholder of the company he possessed incidents of ownership in the policy which he could exercise "in conjunction with" the company, and, therefore, that the proceeds of the policy are includible in his estate under § 2042. Further, the defendant relies on Treasury Regulation § 20.2042–1(c) (2), quoted above, which states that the term incidents of ownership "* * * includes the power to change the beneficiary reserved to a corporation of which the decedent is the sole stockholder."

The plaintiffs have proffered nothing which would indicate to the court that there is a genuine issue of material fact as to whether the decedent possessed incidents of ownership in the Prudential policy at his death. Therefore, the court is of the opinion that the defendant is, likewise, entitled to summary judgment with regard to the Prudential policy.

Accordingly, defendant's motion for summary judgment is granted, and the action is dismissed. It is so ordered.

---

4. The executor also argued that, even if the decedent did possess reserved powers in the policy, such powers were illusory, since it would have been impossible for him to exercise them between the time he boarded the plane and the time of the crash. The Court rejected this argument, holding that § 2042 imposed tax liability on the general legal power to exercise ownership without regard to the owner's ability to exercise it at a particular moment.