## ARMSTRONG'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8573.

Circuit Court of Appeals, Seventh Circuit.

Dec. 29, 1944.

Rehearing Denied Jan. 30, 1945.

Moses Levitan, of Chicago, Ill., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Morton Rothschild, and

458

J. P. Wenchel, Department of Justice, all of Washington, D. C., and J. Louis Monarch and Harry Baum, Sp. Assts. to Atty. Gen., for respondent.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

· SPARKS, Circuit Judge.

This petition to review a decision of the Tax Court presents the question of the value of a trust corpus, if any, to be included in the gross estate of the decedent. The Commissioner asserted, and the Tax Court held, that the full value of the corpus was to be included, while the taxpayer asserted that it should be excluded in its entirety, or if included at all, only at the amount fixed for its sale under the provisions of a trust agreement entered into six years prior to the death of decedent.

The trust agreement which gave rise to the present controversy was entered into in 1933 when Edwin Armstrong delivered to a trustee 500 shares of the stock of the corporation of which he had long been president, and was then Chairman of the Board. Under the provisions of the trust agreement then entered into between the settlor, trustee, and one Mitchel Goldsmith, then president of the corporation and long a trusted employee, the trustee was to hold the stock during the lifetime of the settlor for the benefit of settlor's wife, paying over to her any dividends thereon; she was also to have all voting rights in the stock. After the death of the settlor, for a period of five years, Goldsmith was to have an option to buy the stock upon payment of $25,000, which payment was to be delivered over directly by the trustee to the wife, as received from Goldsmith, to whom the stock was to be transferred thereupon. In the event of the death of the wife, either before or after settlor's death, and after all the stock had been paid for in part or in full, Goldsmith was to have the stock without any or further payment.

Provision was made for revocation or modification of the agreement upon written notice to the trustee signed by settlor and Goldsmith. Provision was also made for its termination during the lifetime of settlor upon the happening of any of three contingencies, death, or insanity or incompetence of Goldsmith, or upon his ceasing to be in the employ of the corporation. In any of these events, the trust was to be null and void and the trustee was to return the stock to the settlor. In the event that the option was not fully exercised by Goldsmith within the five year period following settlor's death, any stock not purchased by him was to be transferred to the settlor's wife. The sale and transfer of the stock to Goldsmith under the agreement was subject to the restriction, binding upon him, his heirs and assigns, that if he desired to sell any of the stock, it must first be offered to the corporation which was to have the option to purchase it within 60 days at a price equal to half the book value of the stock.

These then were the salient features of the agreement: During the continuance of the trust, settlor retained no control over the corpus and derived no benefit from it; the trust was revocable during the lifetime of the settlor by written instrument signed only by himself and Goldsmith; it was terminable during his lifetime by the death or insanity of Goldsmith or his ceasing to be in the employ of the corporation; the amount to be paid by Goldsmith, if any, depended upon whether or not settlor's wife died prior to the complete execution of the agreement; the stock in the hands of Goldsmith or his privies was perpetually burdened with the restriction on its sale.

A few immaterial changes were made in the trust agreement, one being required by a change in the stock basis, the 500 shares being exchanged, pursuant to amendment in the Articles of Incorporation, for a new certificate for 2000 at a par value of $50 per share, subject to Goldsmith's option to purchase for the same $25,000.

The settlor died in November, 1939, and thereafter, in December, 1939, Goldsmith exercised his option to purchase by payment of $25,000 to the trustee.

In October 1938, the Commissioner of Internal Revenue notified settlor of a deficiency in gift tax for the year 1933, stating that he had by the trust agreement, parted with all dominion and control over the 500 shares of stock, and that the possibility of reverter was so remote that "it will only revert to you on the happening of conditions precedent which cannot be taken into consideration in determining the value of the gift." The amount of the gift tax set out in the notice was paid by settlor. His executor did not report the shares as part of his gross estate following his death.

The Commissioner contends that under the provisions of § 811(c) and (d),[1] the stock here involved is includible for its full value, which it fixed at $80,000 for the 2000 shares, stating in its determination that such value was "based upon consideration of all relevant factors and elements of value disclosed by the evidence on file." This statement constitutes the only reference in the record to the actual value of the stock, and petitioner nowhere challenged the correctness of the determination of amount or sought to introduce evidence of actual value, contending only that the stock should be excluded in its entirety from the gross estate, or limited for purpose of estate tax to the $25,000 option provided by the trust agreement.

In support of its first contention, for exclusion in its entirety, petitioner contends that the shares were fully and completely transferred by the settlor to the trustee, and since the purchase price was payable, not to the estate but to the widow, the decedent was fully and irrevocably divested of any right or title to the shares and the purchase price thereof, hence neither he nor his estate had any interest either in the shares or their purchase price. We agree with the Commissioner that this position cannot be sustained. The final transfer was not to take place until after decedent's death, and to that extent, it was not to take effect in possession or enjoyment until that event. It was impossible to ascertain until that time just what would ultimately be done with the stock which constituted the corpus of the trust. Goldsmith might have joined decedent in revoking the agreement entirely; . that agreement might have been terminated in its entirety by Goldsmith's death, insanity or cessation of his employment; he might have chosen not to exercise his option to buy at all, in which case the stock would have gone to decedent's widow without condition or restriction; and the price to be paid by Goldsmith depended upon whether or not she lived until the option was fully exercised. Hence, with the exception of the right to receive dividends and vote the stock, the transfer of which did become effective during decedent's lifetime, subject to revocation or termination, no part of the full right to possess and enjoy vested until after his death. For this reason, we cannot agree with petitioner that the transfer was so full and complete as to warrant exclusion of the stock in its entirety from decedent's gross estate.

---

[1] "Sec. 811. Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States. * * *

"(c) *Transfers in contemplation of, or taking effect at death.* To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *·

"(d) *Revocable transfers*

* * * * * *

"(2) *Transfers on or prior to June 22, 1936.* To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

* * * * * *

"(i) *Transfers for insufficient consideration.* If any one of the transfers, trusts, interests, rights, or powers, enumerated and described in subsections (c), (d), and (f) is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent." 26 U.S.C.A. Int.Rev.Code, § 811(c), (d) (2), (i).

460

In support of its second contention, that the stock, if included at all, should be included only to the extent of the $25,000 provided by the agreement for its purchase, petitioner contends that the transfer was a bona fide sale for an adequate and full consideration in money or money's worth within the meaning of the statute. As to this contention, the Tax Court stated: "We have searched the stipulated facts and oral testimony carefully and are unable to find any consideration moving from Goldsmith to Armstrong or the corporation on which to erect a finding that the contract was for an adequate and full consideration in money or money's worth." We fully agree with the court's analysis of the record in this respect, and its conclusion that Commissioner of Internal Revenue v. Bensel, 100 F.2d 639, affirming 36 B.T.A. 246, in no way supports petitioner's contention. We also agree with its suggestion that the terms of the agreement are much more suggestive of a gift—or we might say a legacy. The benefits which flowed both to decedent's widow ($25,000 or the stock) and to Goldsmith (the stock on payment of $25,000, part of that sum, or nothing) are in the nature of a legacy. That such legacies were channelled through a trust created during the lifetime of the donor rather than through his estate proper, administered by his executor, does not change their character for purposes of administering the estate tax laws.

In addition to the Bensel case, above, petitioner here relies upon two other cases to support its theory that the stock should be included only to the extent of its value limited to the amount of the option price, $25,000.[2] Both of these cases involved transfer of stock burdened with restrictions, similar to the provision here involved, that if Goldsmith wished to sell his stock he must first offer it to the corporation which would then have the option, within a limited time, to purchase it for one half of the book value. We agree with the Commissioner that the cases are no authority for the limitation of the valuation to the $25,000—the difference between that amount and the actual value having been correctly determined by the Tax Court to be a gift to Goldsmith. Had petitioner advanced the theory before the Tax Court, that the value of the stock was reduced by this restriction on its transfer by Goldsmith and his heirs and assigns, the Tax Court might well have considered it and perhaps been persuaded by it to reduce the Commissioner's determination of the value of the stock for inclusion in the gross estate. However, so far as appears from the record, that theory was never suggested to the court, and in fact, no question was ever raised as to the *value* of the stock—the only question being what part of that value, if any, should be included in the gross estate. The Tax Court asked petitioner the question, "Are your witnesses going to testify to values?" In reply petitioner stated, "They are here to testify to the ability and to the value to the company of Mr. Goldsmith." The court commented in its opinion on this total absence of evidence of value: "There is no evidence of the value of the stock at any date. Thus no measure of value is supplied."

In this state of the record, having determined that there was no warrant under the law for excluding the value of the stock in its entirety from the gross estate, or limiting that value to the $25,000 option price, the Tax Court had no alternative but to accept the determination of the Commissioner as to the valuation of the stock and assess the deficiency accordingly. We note that even before this court, petitioner makes no point of the effect of the restriction, referring to it only with the statement: "Therefore, under no circumstances, are said shares properly assessable at the same value as are other shares of the company, not subject to the same restrictions." However, in its conclusion, it asks only that we reverse either because the shares should be excluded in their entirety or included only to the extent of the $25,000 option price. Hence we do not consider the question whether the value of the stock should be limited to the restricted price for which Goldsmith could sell it to the corporation.

Petitioner raises a further question, whether the settlement of the gift tax liability between the settlor and the Commissioner constituted a settlement of all tax liability arising out of the transaction. We agree with the Commissioner that the settlement did not have that effect. Petitioner has been given full credit for the gift tax paid. Under the decisions of Smith v. Shaughnessy, 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690, and Robinette v.

---

[2] Lomb v. Sugden, 2 Cir., 82 F.2d 166; Wilson v. Bowers, 2 Cir., 57 F.2d 682.

Helvering, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700, the Court held that where trusts were created whereby property was split into life, remainder, and reversionary interests, those interests were subject to either estate or gift taxes, the laws pertaining thereto being closely related and supplementary, and the fact that a tax had been assessed under one statute did not bar assessment under the other.

Decision affirmed.