Irving A. PUCHNER and Fern I. Lindner, Co-Executors of the Estate of Henry L. Lindner, Deceased, Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

No. 65-C-308.

United States District Court
E. D. Wisconsin.

Aug. 30, 1967.

William E. Shaw, Milwaukee, Wis., for plaintiffs.

Mitchell Rogovin, Asst. Atty. Gen., David A. Wilson, Jr., and Allen L. Schwait, Attys., Dept. of Justice, Washington, D. C., James B. Brennan, U. S. Atty., by Franklyn M. Gimbel, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, Senior District Judge.

## DECISION

This an action for recovery of deficiencies of estate tax assessed against and paid together with interest by plaintiffs who are the co-executors of the Estate of Henry L. Lindner, deceased (hereinafter called the "Decedent"). The deficiency assessment resulted from inclusion in the gross estate of the sum of $43,925.41, which Decedent contributed as one-half of the assets of the Fern I. Thompson Trust (hereinafter called the "Trust"), and of $9,865.10, the proceeds of a policy of life insurance of which Decedent had been the owner and insured at the time of his death. The case has been submitted for decision on the stipulation of the parties, the record of the trial to the court, and the briefs of counsel.

Decedent and Fern I. Thompson Lindner (referred to as the "Widow" herein), were married on March 5, 1956. At this time, Decedent was a 58-year-old widower and retired business man of parsimonious habits, who was living on the income from his investments. He had two children by his previous marriage, Chadford Henry Lindner, born August 6, 1922, and Lee Frederick Lindner, born May 29, 1934. The Widow was 43 years old, had also been previously widowed, but had no children. She had been Decedent's secretary and a friend of his family for many years. Her closest living relatives were her 65-year-old father and a half brother and half sister, the children of her father.

Just prior to the marriage, on March 2, 1956, the parties executed a pre-nuptial agreement and established the Trust pursuant to its terms. In this agreement the Widow relinquished any marital rights in Decedent's property or estate she might or could have acquired by virtue of the marriage. The parties agreed to establish the Trust by equal contributions in the amount of $43,925.41 each in property or cash. The Trust was to be administered by them as trustees, with the Marshall & Ilsley Bank, Milwaukee, Wisconsin, named as successor trustee in the event of Decedent's death. The net income of the Trust was to be paid one-half to each party, and the entire income to the survivor of them for his life. On the death of the survivor, the corpus was to be paid in equal shares to Decedent's sons.

The pre-nuptial agreement further provided that Decedent was to pay the premiums on two policies of life insurance on the life of the Widow, to-wit: The Prudential Insurance Company of America, Policy No. 10120952, and John Hancock Life Insurance Company, Retirement Annuity Policy No. 087673. These policies were to be made payable to Decedent as beneficiary, and in the event he predeceased the Widow, were to be surrendered and the cash value to be paid to the trustees and to become part of the corpus of the Trust.

Decedent further agreed to make the Trust the beneficiary of an insurance policy on his life, New York Life Insurance Company, Policy No. 17703423, in the face amount of $9,000.00, and to pay the premiums on said policy for the remainder of his life. At his death, if the Widow were then living, the proceeds of said policy were to be paid to the trustees and become part of the corpus of the Trust.

The trust agreement, also executed on March 2, 1956, repeats the provisions for payment of income and distribution of corpus as set forth in the pre-nuptial agreement and further specifies the respective contributions of the parties. As there listed, Decedent's contribution consisted of certain United States Treasury and G Bonds having a face value in the total amount of $43,000.00 and $925.41 in cash. The Widow conveyed to the Trust certain shares of stock, savings accounts, a note, the two insurance policies described above, and certain real estate, also having a total value of $43,925.41. On June 15, 1957, the parties made the Trust irrevocable and filed federal gift tax returns disclosing its creation and irrevocability for that year.

Decedent died on July 31, 1962. Shortly thereafter, the Widow received the proceeds of the New York Life Insurance Company policy on his life in the sum of $9,865.10 and turned them over to the Marshall & Ilsley Bank as successor co-trustee of the Trust. At this time, she was the named beneficiary of the policy. No change of ownership or beneficiary of this policy had been recorded with the insurance company. Further, the two policies on the life of the Widow were surrendered for cash and the proceeds were turned over to the Trust.

The parties to this suit have agreed to certain valuations of the contributions to the Trust as of March 2, 1956, and that these values were substantially similar on June 15, 1957, the date the Trust was made irrevocable. The contribution of the Widow is in the amount of $43,-925.41, excluding the value of the insurance policies which had a total cash surrender value of $6,639.97 as of June 15, 1957. Further, it was agreed that certain named Treasury and G Bonds having a face value of $44,000, had an actual value of $42,274.84.[1]

It has also been stipulated that the transfer by a 43-year-old person in the principal sum of $43,925.41 results in a remainder interest to pass at the death of the last to die of two persons ages 58 and 43, in the amount of $16,030.57, and a life interest to the 58-year-old person of $1,628.66, and that the corresponding remainder and life interests are $2,423.23 and $244.71, where the principal amount is $6,639.97.

After their marriage, Decedent and the Widow lived in the home she contributed as part of the trust corpus. The trust income, one-half from each party, was used to maintain the home, with the Widow paying one-half of the taxes, repairs, and water expense out of her share. At the time of the marriage as well as at his death, Decedent owned substantial property other than that which he contributed to the Trust. The value of one-half of the assets of the Trust at the time of Decedent's death and excluding the proceeds of the New York Life Insurance policy was of the stipulated amount of $48,265.10.

The issues presented in this case involve the includability in Decedent's gross estate of his contribution to the Trust and of the proceeds of the New York Life Insurance policy, and the further question whether these proceeds, if includible, qualify for the marital deduction.

1. *The Transfer with Retained Life Estate*

█ In the creation of the Trust pursuant to the pre-nuptial agreement and the terms of the Trust, Decedent made

1. There is a discrepancy between the value of Decedent's contribution as listed in the Trust and pre-nuptial agreement and the value used in the stipulation which does not, however, provide that Decedent in fact contributed bonds having a face value of $44,000.

an inter vivos transfer by trust of property in which he retained for his life the right to income. Under Section 2036, Title 26 U.S.C.A., the value of such transferred property is includible in the gross estate of the transferor except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Greene v. United States, 237 F.2d 848, 852 (7th Cir. 1956).

■ Although executed in contemplation of the solemnization of the marriage of Decedent and the Widow, the transaction whereby the Trust was established has the indicia of a carefully calculated business bargain between mature persons of some means. At Decedent's insistence the bride-to-be not only relinquished her dower and homestead rights, but further placed all her own worldly possessions in trust with the remainder interest going to Decedent's children to the exclusion of her own relatives in return for an income for life augmented by his equal contribution of trust corpus. In view of the provisions of the agreements and the testimony concerning the circumstances of their execution, the court finds that the Decedent's transfer of property to the Trust was part of a bona fide, arm's length exchange of property within the exception of Section 2036 of the Internal Revenue Code. The facts of the case serve to distinguish the holdings in Estate of Guenzel v. Commissioner of Internal Revenue, 258 F.2d 248 (8th Cir. 1958), and Haskin's Estate v. United States, 357 F.2d 492 (9th Cir. 1966), where divisions, not exchanges, of property in trust with retained life estates and remainders to the children of the respective couples were determined to constitute transfers within the reach of Section 2036.

In the case of a transfer of property within the exception of Section 2036, it further remains to determine the adequacy of the consideration moving to the transferor since Section 2043 of the Internal Revenue Code provides for inclusion in his gross estate of the excess of the fair market value at the time of death of the transferred property over the value of the consideration received therefor. Greene v. United States, 237 F.2d 848, 854 (7th Cir. 1956). The principle of the gift tax provisions whereunder a bona fide transfer without donative intent is deemed to be for adequate and full consideration is not applicable in cases of transfer subject to estate taxation under Sections 2036 and 2043 of the Internal Revenue Code. United States v. Past, 347 F.2d 7, 12 n. 2 (9th Cir. 1965).

As a first item, Decedent received a life interest in the income from the corpus of the Trust. The portion attributable to the Widow's contribution has an agreed value of $1,628.66 and may be deemed consideration for the property he transferred. United States v. Past, 347 F.2d 7, 14 (9th Cir. 1965).

■ Further, taxpayers contend that the remainder interest in the Widow's contribution vested in the children of the Decedent should be considered as consideration since the benefit ran to Decedent's children who were his principal beneficiaries under his will and valid third-party beneficiaries under the pre-nuptial agreement. In Estate of Goetchius v. Commissioner of Internal Revenue, 17 T.C. 495 (1951), a beneficiary relinquished contingent future interests in trust income in favor of the transferor's brother. Since the brother had no claim against the decedent which was thereby extinguished and the decedent had no duty toward or obligation to his brother which was thereby satisfied, the Tax Court determined that the benefit to the third-party did not augment the property of the transferor and did not constitute a benefit reducible to a value equal to that of the transferred property. Similarly, in the instant case, there was no pecuniary replenishment of the estate of the Decedent by the gift of the remainder interest to his children. Rather, the pre-nuptial agreement served to channel the future interest in his contribution as well as that of the Widow to his sons. The value of the remainder interest does not, therefore, satisfy the requirement of consideration moving to the Decedent. See also, Armstrong's Estate v. Commis-

sioner of Internal Revenue, 146 F.2d 457 (7th Cir. 1944), where a payment of $25,000 to settlor's widow for stock of unknown value which was the subject of the trust corpus was deemed the channeling of a legacy through the trust.

■ Under these principles, the life interest of the Decedent in the insurance policies contributed by the Widow, or $244.71, also qualifies as consideration, but the remainder interest vested in his sons does not.

■ Taxpayers further contend that Decedent received a life estate in the home which the Widow contributed to the Trust. Although it is not disputed that Decedent lived in said home following the marriage and for the remainder of his life, there is no evidence of record to support the conclusion that he did so by virtue of a life tenancy in the property. The pre-nuptial agreement as well as the Trust gave Decedent merely a life interest in trust income. The living arrangement of Decedent and the Widow was pursuant to their authority as trustees under the Trust. As such, they had power to sell, transfer, and convey the whole or any part of the trust corpus, whether personal property or real property, and to receive the rents and profits thereof, with the corresponding obligation to improve, manage, and control the assets of the Trust. These provisions of the Trust are inconsistent with the existence of a life estate in Decedent in the realty which was an asset of the Trust. Taxpayers have failed to show an actual value accruing to Decedent incidental to his living in the home, whether this be designated as rental, as claimed by the government, or the receipt of income and profit from the Trust. As submitted by taxpayers, this item cannot be recognized as consideration moving to Decedent.

■ Similarly, any benefits enjoyed by Decedent by virtue of the arrangement whereunder the Widow paid one-half of the taxes, repairs, and expenses out of her share of the trust income, does not arise out of any obligation as-

sumed under the pre-nuptial agreement or the Trust and does not, therefore, constitute consideration moving to Decedent in return for his contribution to the Trust.

■ Lastly, taxpayers contend that a life estate in one-half of the excess of the Widow's contribution to the Trust over that of Decedent should be deemed consideration. Under Section 2043 of the Internal Revenue Code there is included in the gross estate of the Decedent the excess of the fair market value at the time of death of the property of which he made a transfer over the consideration received by him. Any benefit Decedent received by virtue of a greater contribution by the Widow is already reflected in the life interest attributable to her contribution to the Trust. The excess, thus, does not furnish additional consideration.

In summary, the court finds that taxpayers have met their burden of showing consideration moving to Decedent consisting of his life interest in the total contribution of the Widow to the Trust, that is, in the amounts of $1,628.66 in respect to the initial contribution of $43,-925.41, and $244.71 attributable to the cash surrender value of the insurance policies she surrendered.

### 2. Proceeds of Life Insurance

■ Although Decedent agreed to contribute New York Life Insurance Company Policy No. 17703423 of which he was the owner and insured as an asset of the Trust, no change in beneficiary on the records of the insurance company was effected. Under the policy terms, Decedent as owner retained control over the policy property. He could have changed beneficiaries, exercised options as to dividend payments, assigned, made loans or surrendered the policy. Since Decedent was possessed of these powers as incidents of ownership in the policy at the time of his death, the proceeds are includible in his gross estate under Section 2042, Title 26 U.S.C.A., even though he may have had a contractual obligation to transfer the policy to the

**710**

Trust. United States v. Rhode Island Hospital Trust Company, 355 F.2d 7 (1st Cir. 1966); Farwell v. United States, 243 F.2d 373 (7th Cir. 1957). And see, Commissioner of Internal Revenue v. Estate of Noel, 380 U.S. 678, 684, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965).

*3. Marital Deduction*

■ Although contending that the policy facts control over the intent of the policy owner or his contractual obligation for purposes of includibility in his gross estate, the government looks to the pre-nuptial agreement and the provisions of the Trust, in disregard of the policy facts, in claiming that the proceeds do not qualify as a non-terminable interest for purposes of the marital deduction under Section 2056, Title 26 U.S.C.A. The Widow was the named beneficiary of the New York Life Insurance Company Policy No. 17703423 at the time of the death of Decedent. She received the proceeds on his death and, in accordance with the pre-nuptial agreement, turned them over to the successor co-trustee to become part of the trust corpus. The proceeds came to the Widow by virtue of the policy provisions. Her compliance with the provisions of the pre-nuptial agreement does not change the nature of the non-terminable interest passing to her under the terms of the policy. The proceeds of said New York Life Insurance Company Policy No. 17703423 qualify as a deductible non-terminable interest for purposes of the marital deduction under Section 2056 of the Internal Revenue Code. See United States v. Ford, 377 F.2d 93, 99 (8th Cir. 1967).

The court hereby adopts the relevant provisions of the stipulation of facts of the parties as its findings of fact. The foregoing decision stands for the court's additional findings of fact and its conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure. Counsel for plaintiffs is hereby directed to prepare an order for judgment in accordance therewith, submitting the same to counsel for defendant for approval as to arithmetical computation and form only.