Tom J. KEARNS, Jr., Administrator of the Estate of Oscar Eugene Kearns, Deceased

v.

The UNITED STATES.

No. 165–65.

United States Court of Claims.

July 17, 1968.

---

Thomas A. Frazier, Jr., Washington, D. C., attorney of record, for plaintiff; Ivins, Phillips & Barker, Washington, D. C., of counsel.

William C. Ballard, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

1. "Sec. 2042. Proceeds of life insurance.

"The value of the gross estate shall include the value of all property—
\* \* \* \* \* \* \*
"(2) Receivable by other beneficiaries.—To the extent of the amount receivable by all other beneficiaries as insurance

OPINION

PER CURIAM:

This case was referred to Chief Trial Commissioner Marion T. Bennett with directions to make findings of fact that recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on January 26, 1968. Exceptions to the commissioner's opinion, findings, and recommended conclusion of law were filed by plaintiff and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court is in agreement with the opinion, findings and recommendation of the commissioner, with an addition to the opinion by the court, it hereby adopts the same, as modified, as the basis for its judgment in this case as hereinafter set forth. Therefore, plaintiff is not entitled to recover and the petition is dismissed.

Chief Commissioner Bennett's opinion, with an addition by the court, is as follows:

This is a suit for refund of $6,900 in estate taxes paid as a deficiency assessment on the proceeds of two life insurance policies. The policies insured the life of the decedent, Oscar Eugene Kearns, who died on March 26, 1958. Named as beneficiary was his family-owned business, O. E. Kearns & Son, Inc. Plaintiff is the decedent's grandson and is the duly qualified administrator of his estate. The question for determination is whether decedent at the time of his death possessed any of the incidents of ownership in the policies within the meaning of section 2042(2) of the Internal Revenue Code of 1954, ch. 736, 68A Stat. 387,[1] 26 U.S.C. § 2042 (1964), Treas.Reg. § 20.2042–1(c).

under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For purposes of the preceding sentence, the term 'incident of ownership' includes a reversionary interest (whether arising by

Briefly stated, the facts are as follows:

In 1928, decedent applied for and received from the Union Central Life Insurance Company of Cincinnati, Ohio, two policies of insurance on his life, one of $10,000 face amount and the other $15,000. Both policies named as beneficiary the decedent's family business, then a partnership, O. E. Kearns & Son. Under the terms of the policies, certain rights and privileges were granted to the insured (the decedent), including the right to change the beneficiary, to exercise a conversion privilege, to choose a method of utilizing the surrender value, and to elect a settlement option.

In 1930, the partnership was incorporated as O. E. Kearns & Son, Inc., and the name of the beneficiary was changed to reflect this fact. All premiums on the policies were paid first by the partnership and later by the corporation. The policies were carried as an asset on the company's books and financial statements. On several occasions these policies were assigned as collateral for loans made to the corporation by the Wachovia Bank and Trust Company of High Point, North Carolina. Written notice of the assignments was given to the insurance company in each instance and decedent, as insured, consented to the assignments. The corporation had physical custody of the policies at all times (except while they were assigned to the bank) and kept them in the company safe with the valuable papers of the corporation.

In executing papers for the above-mentioned collateral assignments, the corporation was customarily designated as "owner-beneficiary." In short, decedent's actions and statements suggest that he considered these policies to be corporate property separate and apart from his own assets, including his personal life insurance. For this reason, these policies were not included in the gross estate when the estate tax return was filed. On July 29, 1960, the District Director of Internal Revenue assessed a deficiency in estate tax resulting, in part, from inclusion of these policies in the gross estate. This assessment was paid on August 15, 1960, and a claim for refund was timely filed on August 13, 1962. Upon rejection of this refund claim, this suit was commenced.

On the basis of the foregoing facts, plaintiff contends that decedent never intended for these policies to be his own, and that this intent served to divest him of any rights in the policies, notwithstanding any contrary provisions in the policies themselves. Specifically, plaintiff contends that the decedent had assigned all his rights in the two policies to the corporation, and that any incidents of ownership the decedent retained were held by him as a mere nominee on behalf of the corporation. Defendant denies both of these contentions and asserts that the decedent did possess incidents of ownership at his death so that the proceeds of both policies are properly includible in his gross estate under section 2042(2), supra.

the express terms of the policy or other instrument or by operation of law) only if the value of such reversionary interest exceeded 5 percent of the value of the policy immediately before the death of the decedent. As used in this paragraph, the term 'reversionary interest' includes a possibility that the policy, or the proceeds of the policy, may return to the decedent or his estate, or may be subject to a power of disposition by him. The value of a reversionary interest at any time shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the Secretary or his delegate. In determining the value of a possibility that the policy or proceeds thereof may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such policy or proceeds may return to the decedent or his estate."

Thus, this court is called upon to decide whether the facts indicating decedent's intentions are sufficient to overcome the facts set forth in the contracts themselves. In light of the Supreme Court's holding in Commissioner of Internal Revenue v. Estate of Noel, 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965), the policy facts would appear to be controlling. Since decedent retained significant rights under the policies, it is found that he did, at his death, possess incidents of ownership in these policies rendering them includible in his gross estate pursuant to section 2042(2).

In the *Noel* case, supra, the decedent's wife purchased two airline flight insurance policies covering decedent shortly before he was killed in a plane crash. After holding these policies to be life insurance within the meaning of section 2042, the Court considered the executor's alternative arguments that (1) the policies belonged to decedent's wife, since she had purchased them, and (2) that decedent had made a gift of the policies to her. The decision held the proceeds taxable to the decedent's estate, answering both arguments merely by reference to the terms of the contracts. Since the policies granted the decedent the right to change the beneficiary or to assign the policy, the wife's claim of unconditional ownership was found to be erroneous. The *gift contention was overcome* by the policy provision requiring a written endorsement on the policy to effect any assignment.

Plaintiff here would distinguish *Noel* on grounds that the policies now in issue did not specifically require either a written endorsement or notice to the insurer as a prerequisite to assignment. This assertion is easily overcome by reference to paragraph 25 of the policies, which provides that "the insured, without the consent of any beneficiary, may exercise every right and receive every benefit reserved to the insured, *or the owner of the policy* * * *." [Emphasis supplied.] Thus, something more than a mere assignment is necessary to divest the insured of his rights under this particular policy. Moreover, plaintiff's contention is misplaced in the light of the specific finding that decedent did retain incidents of ownership in the policies (and thus did not assign all his rights therein). In addition, the policy clearly provided that the "insured" and the "owner" were separate entities and the decedent never assigned or attempted to assign his rights as "insured" (if, indeed, he was permitted to do so under the policy). The Kearns company may have been designated in certain documents as the "owner," but the decedent continued to refer to himself as the "insured" and to retain the rights of the "insured." See findings 14(a), (b), 16(a), (b), 17. In any case, paragraph 25 of the policy indicates that, at the very least, the insured's privilege (if any) of assigning his right to change the beneficiary could not be validly exercised without written notification to the insurance company—that is the clear implication of the requirement that a change of beneficiary could not be made without a "written notice to the company at the Home Office"—and no such notice of assignment or attempted assignment was ever given. The *Noel* decision, 380 U.S. at 683, 85 S.Ct. 1238, shows that in these respects the terms of the policy are controlling.

Several litigated cases present this same situation, with a decedent insuring his life, naming his business as beneficiary, and with the business thereafter paying the premiums and otherwise exercising dominion over the policy. Such cases hold almost uniformly that where the decedent retains rights under the policy he possesses incidents of ownership within the meaning of section 2042(2). Estate of Piggott v. Commissioner of Internal Revenue, 340 F.2d 829 (6th Cir. 1965); Hall v. Wheeler, 174 F.Supp. 418 (S.D.Me.1959). Cf. Commissioner of Internal Revenue v. Estate of Noel, supra; United States v. Rhode Island Hospital Trust Co., 355 F.2d 7 (1st Cir. 1966); Estate of Michael Collino, 25 T.C. 1026 (1956).

One exception to this general rule is Estate of Edward Doerken, 46 B.T.A. 809 (1942), where proceeds of life insurance policies payable to decedent's corporate employer were held not includible in his gross estate despite a retention of rights in the policies by the decedent insured. This case was decided under section 302(g) of the Revenue Act of 1926, ch. 27, 44 Stat. 9, 71, as amended by section 404 of the Revenue Act of 1934, ch. 277, 48 Stat. 680, 754. That statute taxed, within certain limitations "insurance under policies taken out by the decedent upon his own life," and did not contain any reference to incidents of ownership, although the term "legal incidents of ownership" did appear in the regulations.[2] The board applied the premium payment test and concluded that since the corporation had obtained the insurance and paid all premiums thereon, this insurance had not been "taken out" by the decedent. Although the decedent did retain rights under the policies, he was found to be only the nominal owner thereof.

A representative case under the 1954 Code (section 2042) is Estate of Piggott v. Commissioner of Internal Revenue, supra. There the corporate beneficiary paid the premiums on the policy, used it as collateral for business loans, and carried it on the corporate books as an asset of the corporation; yet the policy was held includible in decedent's estate under section 2042(2), due to his retention of certain policy rights, including the right to change the beneficiary. The taxpayer there argued that, as in Doerken, decedent intended that the policy be wholly the property of the corporate beneficiary and that he was merely the nominal holder of rights under the policy. The court disagreed, holding that the taxpayer had failed to meet his burden of proof on the question of decedent's intent to divest himself of all rights in the policy. By way of dictum, the court disapproved of the Government's contention that the Doerken rationale was obsolete under the 1954 Code, preferring instead to distinguish that case on factual grounds.

The same factors obtain in the present case. Plaintiff here has offered no more convincing evidence of a transfer of the incidents of ownership than did the taxpayer in Estate of Piggott v. Commissioner of Internal Revenue, supra; accordingly, he has failed to meet his burden of proof on this issue. Furthermore, recent cases under section 2042(2) suggest that the Doerken rationale is indeed obsolete under the 1954 Code, for Estate of Piggott v. Commissioner of Internal Revenue, supra, suggesting otherwise, was decided prior to the Supreme Court decision in Commissioner of Internal Revenue v. Estate of Noel, supra; see also United States v. Rhode Island Hospital Trust Co., supra, and Puchner v. United States, 274 F. Supp. 704 (E.D.Wis.1967). These cases further delineate the general rule that so-called "policy facts" (i. e., reservation of rights in the contract of insurance) are not easily rebutted by reference to "intent facts" or external circumstances.

The advantage of such a well-defined rule for taxability of life insurance proceeds was succinctly stated by the court in United States v. Rhode Island Hospital Trust Co., supra, 355 F.2d at 13:

> While decisions against the estate of a passive but power-possessing decedent may often conflict with the honest intentions and understanding of premium-paying beneficiaries and insureds, the alternative of abandoning the insistence on the governing nature of the contract, in most cases, is less desirable. The drawing of a useful line would be impossible; there would be a much wider range of varying decisions on similar facts; and there would be an invitation to unprincipled estate manipulation. As government counsel has pointed out, there could always be a formally executed side agreement under which the

---

2. Treas.Reg. 80, Art. 27(2), T.D. 5032, 1941–1 Cum.Bull. 427, 429.

insured clearly surrenders to the beneficiary all his rights to the policy, such agreement to be brought to light only in the event of the decedent's dying before the beneficiary.

Another exception to the general rule occurs where the insurance contract is mistakenly drawn up in a manner which does not reflect the agreement reached by the parties. National Metropolitan Bank of Wash. v. United States, 87 F. Supp. 773, 115 Ct.Cl. 396 (1950). This rule is, however, inapplicable here since plaintiff has not shown that these policies are in any manner at variance with the understanding reached between decedent and the agent who sold him the policies.

Finally, plaintiff asserts that these two policies have already been included in the gross estate and that to deny recovery in this suit would subject the estate to a double tax on these policies. This claim is based upon the redetermination of the value of decedent's stock in O. E. Kearns & Son, Inc., made by the Revenue agent who audited the return and is said to have included the policies in determination of the value of the stock on the theory that the corporation owned the policies. The agent's report stated that such redetermination was "predicated upon consideration of book value, earnings, dividend-paying capacity, and other factors." Since no further evidence was offered on this point, it must be held that there is insufficient proof thereon to warrant judgment for plaintiff. In any event, whether plaintiff might have had a claim for an agent's possible error or inconsistency, if timely made, has no bearing on the instant issue of whether decedent possessed incidents of ownership in the insurance policies in issue, which is the central question before the court. On this question, the facts of the case as illustrated by the terms of the policy govern and establish the retention of key incidents of ownership by decedent, whatever his intention. The law on this problem is settled and pursuant thereto the petition must be dismissed.