322 A.2d 621.

LINDA A. PETRARCA *vs.* TAX ADMINISTRATOR OF THE STATE OF RHODE ISLAND.

JULY 16 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

450

DORIS, J. On October 26, 1969, Genaro V. Petrarca died, survived by his widow Linda A. Petrarca and his infant daughter Cheryl Ann Petrarca. According to the inventory filed pursuant to G. L. 1956 (1970 Reenactment) §44-23-1,[1] his gross estate for state estate tax purposes consisted of real estate held in joint tenancy with his wife valued at $14,700, tangible personalty valued at $875, and intangible personalty valued at $1,019. In addition, there was a United States Government Employees Life Insur-

---

[1]General Laws 1956 (1970 Reenactment) §44-23-1 reads as follows:

"Statements filed by executors and administrators.—Every executor and administrator appointed by any probate court of this state shall, within thirty (30) days after his appointment, file with the tax administrator an inventory under oath showing the full and fair cash value of the estate, both real and personal, of the decedent whom such executor or administrator represents, together with the names and addresses of all persons known to be interested in such estate as beneficiaries thereof, and shall within one (1) year thereafter file a further statement under oath showing the gain or loss in the value of such estate during the settlement thereof, the amounts paid out from such estate for claims, expenses, charges, fees and allowances enumerated in §§44-22-3 and 44-22-4, and such statement shall also set forth the names and addresses of all persons entitled to take any share or interest of said estate as legatees or distributees thereof, and the fair cash value of each such share and interest."

ance policy on the life of the decedent in the amount of $10,000; this policy was noted on the inventory, and the statutory exemption under §44-22-7(7)[2] was claimed thereon. There was also a mortgage redemption insurance policy on the life of decedent payable to Citizens Savings Bank (Citizens), the mortgagee of one parcel of real estate listed in the inventory, in the amount of $9,299.16, which was not listed in the inventory or supplemental statement.

The deductions claimed in Schedule F of the supplemental statement under §44-22-3[3] were a funeral bill of

[2]General Laws 1956 (1970 Reenactment) §44-22-7(7) reads as follows: "Transfers taxed.—* * *

(7) All life insurance in excess of fifty thousand dollars ($50,000) with respect to which the insured possessed at his death any of the incidents of ownership, payable to a trustee, executor, administrator, or any beneficiary upon the death of the insured shall be deemed a part of the estate of such insured."

[3]General Laws 1956 (1970 Reenactment) §44-22-3 in pertinent part reads as follows:

"Computation of value of net estate of residents.—* * * From the value thus obtained there shall be deducted the amount of all claims legally due and payable in the lifetime of the decedent and allowed against the estate, contingent claims which may become justly due from the estate, funeral expenses, probate charges, fees of appraisers, executors, administrators, or trustees, which in the opinion of the tax administrator shall seem reasonable and commensurate with the value of the estate as returned to the tax administrator, the amount of the allowance made for the support of the widow and family of the decedent by the probate court in accordance with law if commensurate with the value of the estate as returned to the tax administrator, the amount at the death of the decedent of all unpaid mortgages, except mortgages on real property located outside of the state, not deducted in the appraisal of the property mortgaged; and there shall also be deducted all losses incurred during the settlement of the estate in the reduction of the intangible personal property to possession, except so much of such intangible personal property as is represented by bonds and stock in any corporation. No deduction shall be allowed for or on account of any inheritance, succession, or estate tax paid to the government of the United States, or any tax, charge, or expenditure made in respect of real property or tangible personal property located outside this state."

$2,150 and the mortgage to Citizens on the parcel of real estate listed in the inventory in the amount of $9,299.16.

Schedule G of the supplemental statement, where assets of the estate are summarized to arrive at a taxable estate, listed a net estate of $5,145.78, resulting in no estate or inheritance tax.

The inheritance tax examiner, upon notice from the John Hancock Mutual Life Insurance Company of a group creditor life insurance policy payable to Citizens in the amount of $9,299.16, disallowed the amount of the mortgage as a deduction and assessed estate and inheritance taxes in the amount of $133.35.

On January 4, 1972, the tax administrator issued an assessment notice of additional estate and inheritance tax in the sum of $133.35 based on his disallowance of the mortgage deduction. Mrs. Petrarca duly filed her protest of the assessment and demanded a formal hearing. In lieu of a formal hearing, the taxpayer and the tax administrator submitted an agreed statement of facts as provided by the Administrative Procedures Act, G. L. 1956 (1969 Reenactment) §42-35-9.

The taxpayer advanced the following contentions: (1) the policy payable to Citizens was exempt under §44-22-7(7), (2) the mortgage held by Citizens in the amount of $9,299.16 should have been allowed as a deduction under §44-22-3, and (3) Rule 16 of the Inheritance Tax Rules of the Tax Division,[4] adopted November 1, 1965 by the tax administrator, was unauthorized by §44-22-3.

---

[4]Rule 16 provides:

"No debt will be allowed as a deduction unless it represents a charge against the estate and is actually paid from the funds of the estate. Thus, a claim satisfied by life insurance assigned to a creditor as security or one satisfied by life insurance of which the creditor is named the payee, shall not be allowed as a deduction. Such insurance proceeds to the extent that they are used to satisfy a debt, shall not be included in the total of life insurance included under the provisions of Section 44-22-7(7) of the General Laws of 1956."

The hearing officer found that:

"Rule 16 is an extension and a reasonable interpretation of §44-22-3 which deducts the amount, at the death of the decedent, of all *unpaid* mortgages. This interpretation is based on a liberal construction of the Inheritance tax statutes as authorized by §44-23-45, in general; in particular it is based on the premise that decedent specifically provided for the payment of the mortgage, that the mortgage is not a charge upon the assets of the estate and does not, in fact reduce the assets thereof, that the creditor-mortgagee is the designated payee who receives the proceeds free and clear of any charge, and that the taxpayer-beneficiary receives the real estate at the full and fair cash value and therefore should be assessed and taxed at that value.
\* \* \*

"The deduction of the amount of the mortgage is disallowed; the tax as assessed is correct."

The tax administrator reviewed the record and approved, adopted, and incorporated the findings of fact, conclusions of law, and decision of the hearing officer in his decision that the assessment of inheritance and transfer taxes in the amount of $133.35 was correct.

Thereupon, the taxpayer paid the assessment, plus interest, and filed her complaint in the Superior Court. Count I of the complaint was filed pursuant to §42-35-15(a),[5] and Count II was a class action pursuant to Super.

---

[5]General Laws 1956 (1969 Reenactment) §42-35-15(a) reads as follows:

"Judicial review of contested cases.—(a) Any person who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter. This section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. Any preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency decision would not provide an adequate remedy."

R. Civ. P. 23(a)[6] in which Mrs. Petrarca was seeking for herself and others similarly situated a ruling that Rule 16 is illegal and void and a refund of all sums paid under Rule 16. After hearing, the trial justice dismissed Count I by affirming the decision of the tax administrator, and reserved decision on Count II. The taxpayer filed a petition for writ of certiorari in this court pursuant to §42-35-16,[7] which was denied.

Thereafter, the tax administrator filed a motion to dismiss Count II under Super. R. Civ. P. 12(b)(6),[8] which was granted. The taxpayer thereupon filed her notice of appeal, which appeal is now before us. At the same time, the taxpayer also filed her second petition for writ of certiorari in this court pursuant to §42-35-16 which was again

---

[6]Super. R. Civ. P. 23(a) reads as follows:

"Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on hebalf of all, sue or be sued."

[7]General Laws 1956 (1969 Reenactment) §42-35-16 reads as follows:

"Review by supreme court.—Any party in interest, if aggrieved by a final judgment of the superior court rendered in proceedings brought under §42-35-15, may, within seven (7) days from the date of entry of such judgment, petition the supreme court of the state of Rhode Island for a writ of certiorari to review any questions of law involved. The petition for a writ of certiorari shall set forth the errors claimed. Upon the filing of such a petition with the clerk of the supreme court, the supreme court may, if it sees fit, issue its writ of certiorari to the superior court to certify to the supreme court the record of the administrative proceeding under review, or so much thereof as was submitted to the superior court by the parties, together with any additional record of the proceedings in the superior court."

[8]Super. R. Civ. P. 12(b)(6) reads as follows:

"Rule 12. Defenses and objections—when and how presented—by pleading or motion—motion for judgment on pleadings.

"(b) * * * (6) failure to state a claim upon which relief can be granted * * *."

denied but "* * * without prejudice to right of petitioner to present the same question on her appeal from final judgment in Superior Court."

We first consider defendant's contention that the merits of Count I (the dismissal by the Superior Court justice of plaintiff's appeal (under the Administrative Procedures Act is not properly before us. The defendant contends that when this court denied the petition for writ of certiorari on November 30, 1972, the judgment entered by the Superior Court dismissing Count I of the complaint thereby became final and was res judicata when the motion to dismiss Count II of the complaint (class action) was decided by the Superior Court. The defendant further argues that the dismissal by the Superior Court justice of Count I having become final, it therefore became the "rule of the case," and the subsequent dismissal of Count II on the ground that no right of action existed was correct. The defendant further points out that plaintiff's counsel concedes in his brief that he volunteered to the court that at that point in the proceedings there was no merit to the legal argument raised by the taxpayer.

It is true that this court denied the petition for a writ of certiorari to review the decision of the Superior Court justice in dismissing plaintiff's appeal under the Administrative Procedures Act. We were advised that Count II was pending in the Superior Court, and, in keeping with our established rule of not reviewing cases on a piecemeal basis, we denied the petition. Subsequently, as the record indicates, Count II of the complaint (class action) was dismissed, and plaintiff appealed that dismissal to this court and also filed a second petition for a writ of certiorari to review the decision of the Superior Court on Count I and to consolidate the petition with her appeal that had been filed from the judgment of the Superior Court dismissing Count II of the complaint. We denied that peti-

tion without prejudice to the right of petitioner to present the same question on her appeal from final judgment in Superior Court. The petitioner has presented that question on her appeal, and, pursuant to our order denying certiorari, we now consider it.

The issue it raises is whether or not a deduction should have been allowed for the mortgage unpaid to Citizens at the time of decedent's death notwithstanding the mortgage redemption insurance on the life of decedent payable directly to Citizens.

Section 44-22-3 provides in relevant part:

> "* * * there shall be deducted * * * the amount at the death of the decedent of all unpaid mortgages * * * not deducted in the appraisal of the property mortgaged * * *."

It is well settled that in construing a statute we give effect to its plain meaning. The statute here is clear and mandatory. If there are any unpaid mortgages in existence at the date of death of decedent, there must be a deduction allowed. In this case, it is admitted that there was an unpaid mortgage in the amount of $9,299.16 payable to Citizens in existence at the date of death of the decedent. The existence of the mortgage redemption insurance on his life is without relevance; it did not operate so as to pay off the mortgage as of the date of his death. Rather, his death made the life insurance payable. Appropriate claim forms and proof of death forms had to be filed with the insurer. Then the insurance was paid to the mortgagee. When the mortgagee received the money and applied it to the mortgage debt, then and only then was the mortgage paid. This redemption life insurance should be treated like all other life insurance; pursuant to §44-22-7(7), and should be included in the estate subject to $50,000 exemption.

The tax administrator points out that under §44-1-4[9] he is vested with authority to promulgate rules for the administration and enforcement of the tax laws. He argues that pursuant to such authority he duly promulgated Rule 16, upon which he now relies as the basis for the disallowance of the deduction claimed by plaintiff.

As applied to mortgage redemption life insurance, this rule is clearly contrary to the express provision of §44-22-3 for a deduction for mortgages unpaid as of the date of death of the decedent. The statute does provide a deduction for "* * * all claims legally due and payable in the lifetime of the decedent and allowed against the estate * * *." However, that deduction is separate and distinct from and additional to the deduction for unpaid mortgages. Rule 16 clearly cannot apply so as to frustrate the clear legislative intent to allow a deduction for unpaid mortgages. It is the Legislature's province, not the tax administrator's, to amend the statute, if it so desires, to disallow deductions for unpaid mortgages payable by mortgage redemption life insurance. The tax administrator clearly was without authority to promulgate Rule 16 insofar as it purported to disallow deductions for unpaid mortgages payable by mortgage redemption life insurance.

We now consider the plaintiff's appeal from the Superior Court judgment dismissing Count II of the complaint. In the posture of the case as it existed at the time, the trial justice was correct in dismissing the appeal under provision of Super. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. However, in view of our holding as it relates to Count I of the com-

---

[9]General Laws 1956 (1970 Reenactment) §44-1-4 reads as follows:

"Rules and regulations.—The tax administrator is hereby authorized and empowered to make such rules and regulations as he may deem necessary for the proper administration and enforcement of the tax laws of this state."

plaint, the plaintiff, with respect to Count II, is entitled to a hearing on whether in the circumstances a class action is appropriate and, if it is, what protective orders may be required before proceeding further.

Accordingly, the case is remitted to the Superior Court with direction to enter a judgment for the plaintiff on Count I and for further proceedings not inconsistent herewith on Count II.

Mr. Chief Justice Roberts did not participate.

*Pucci & Goldin, Samuel A. Olevson,* for appellant-plaintiff.

*Richard J. Israel,* Attorney General, *W. Slater Allen, Jr.,* Asst. Attorney General, *Perry Shatkin,* Chief Legal Officer Taxation, for appellee-defendant.