Estate of John A. DODENHOFF

v.

R. Gary CLARK, Tax Administrator.

No. 88–393–M.P.

Supreme Court of Rhode Island.

April 5, 1990.

Lawrence P. McCarthy, Guido R. Salvadore, Stephen B. Lang, Higgins, Cavanagh & Cooney, Providence, for plaintiff.

Marcia McGair Ippolito, Chief Legal Officer, Div. of Taxation, for defendant.

## OPINION

FAY, Chief Judge.

The estate of John A. Dodenhoff appeals by means of a writ of certiorari from a District Court decision in favor of the tax administrator, requiring the petitioner to include certain life-insurance proceeds in the estate and disallowing a deduction from the estate for a corporate debt personally guaranteed by the decedent. We affirm the District Court decision.

John Dodenhoff (Dodenhoff) died on January 25, 1984. The estate tax return was filed with the tax division on November 23, 1984. The revenue agent reviewing the return observed that an addendum was filed with the return that stated there were certain insurance policies held on the decedent's life that had not been included in the total of the gross estate. The revenue agent specifically referred to a policy issued by New England Mutual Life Insurance on the life of Dodenhoff for the amount of $500,000 and to a policy issued by National Life of Vermont for the amount of $1 million also naming Dodenhoff as the insured. The first policy designated B & W Electronic Enclosures, Inc. (B & W), and Maxine Dodenhoff, the decedent's wife, as the owners of the policy. Since B & W paid the premiums, the revenue agent concluded that the corporation was, in effect, the owner of the policy. Dodenhoff was the president of the closely held corporation and a majority stockholder. The owner of the second policy was Vitreous State Products, Inc. (Vitreous), a closely held corporation in which the decedent was also the majority stockholder and president of the corporation.

The tax division decided to include the policies in its assessment of the return pursuant to G.L.1956 (1988 Reenactment) § 44–22–7(6):

"The net estate taxable under this chapter shall include any transfer * * * to any person or persons, in trust or otherwise, in the following cases: * * * (6) All life insurance with respect to which the insured possessed at his or her death any of the incidents of ownership, payable to a trustee, executor, administrator, or any beneficiary upon the death of the insured shall be deemed a part of the estate of the insured." [1]

The division concluded that the decedent retained incidents of ownership in the policies because as the majority stockholder in the corporations he had the power during the lifetime of the insured to change the beneficiary, to assign the policy as collateral security, and to sell, assign, and transfer the policy.

Dodenhoff had transferred the stock of B & W and Vitreous to a revocable trust on November 30, 1983. The assets from this trust were transferred by the decedent to a new revocable trust on January 24, 1984, a day before his death. The tax division decided that because this was a revocable trust, ownership of the stock still rested with the decedent, the settlor of the trust, since the assets of the trust could, at any time, become those of the decedent.

In addition to the inclusion of the proceeds of the aforementioned insurance policies in the decedent's estate, the tax division also disallowed a deduction taken by the estate on a corporate note. Fleet National Bank (Fleet) had extended a loan to B & W that was restructured by the bank in October 1983. To secure this transaction, the Dodenhoffs personally guaranteed that loan with an unlimited equity mortgage on their house and a second mortgage on the manufacturing plant they owned in Pawtucket. Additional security was needed at the time because it was a substandard loan, of which repayment was in jeopardy. If B & W had defaulted on the loan, the bank could have gone directly to the Dodenhoffs to seek payment. However, the bank never needed to secure payment on the note from the guarantor, either before or after the decedent's death. The estate took a deduction for the amount of the mortgage guarantees pursuant to

---

1. General Laws 1956 (1988 Reenactment) § 44–22–7(6) is repealed effective January 1, 1991, and does not apply to decedents dying on or after this date. P.L.1985, ch. 181, art. 45, § 2.

§ 44–22–3,[2] which provides:

"The value of the net estate of a resident decedent for the assessment of the tax imposed by § 44–22–1 shall be ascertained by taking the full and fair cash value of the real property located within this state * * * of the tangible personal property * * * including the property and interests described in subdivisions (2), ·(3), (4), (5), and (6) of § 44–22–7 * * *. From the value thus obtained there shall be deducted the amount of all claims legally due and payable in the lifetime of the decedent and allowed against the estate, contingent claims which may become justly due from the estate * * * the amount at the death of the decedent of all unpaid mortgages."

The division disallowed the deduction because the contingent claim was never established as a claim against the estate. The division defended its position by stating clearly that in the event the claim did become payable by the estate, it would still be allowed as a deduction by statute in the future. Until B & W defaulted on the note, the division considered it a corporate note, not a liability or contingent liability of the estate.

On January 19, 1988, the tax administrator approved the administrative decision. The tax assessed was $156,688.54, as opposed to the tax of $248,850.61 originally assessed by the division. Accordingly petitioner appealed the division's findings and conclusions to the District Court for a redetermination pursuant to G.L.1956 (1985 Reenactment) § 8–8–24. The District Court did not take additional testimony but, upon agreement by the parties, used the transcript of testimony and memoranda of law from the administrative level. On August 17, 1988, the District Court issued a written decision affirming the decision of the tax administrator. No additional findings or conclusions were made.

The petitioner filed a petition for a writ of certiorari with this court on September 6, 1988, seeking review of the District Court decision. We granted the petition on December 22, 1988.

The petitioner's first argument concerns the inclusion of the two insurance policies in the estate. Section § 44–22–7(6) requires the inclusion of life insurance proceeds into the gross estate when a decedent possessed "any of the incidents of ownership" at the time of death. The petitioner contends that the decedent did not possess incidents of ownership in the policies and that the tax administrator erroneously applied the comparable federal tax statute and regulation to this case, in the absence of an applicable Rhode Island regulation.

The petitioner points out that the language of the federal law differs from the Rhode Island law in that it specifically provides for a situation in which there is shared ownership of an insurance policy. The Internal Revenue Code requires that the proceeds of life insurance be included in the value of the gross estate when:

"[T]he decedent possessed at his death any of the incidents of ownership, exercisable *either alone or in conjunction with any other person.*" (Emphasis added.) 26 U.S.C.A. § 2042(2) (West 1989).

The petitioner contends that since the Rhode Island statute does not include the phrase "either alone or in conjunction with any other person" and the decedent did not possess sole ownership or control over the policies, § 44–22–7(6) does not apply. The petitioner argues that a majority shareholder who does not exercise sole control is not intended to be targeted by the statute.

The petitioner is reading more into the difference in wording between the Rhode Island and the Federal Statutes than is warranted. The fact that § 44–22–7(6) does not mention the shared ownership of an insurance policy does not mean that only those decedents who have *sole* control over an insurance policy must include the proceeds in their gross estates. Such a reading would defy the plain meaning of the statute.

The construction of statutes is a matter reserved for the courts. Unless a contrary

---

**2.** Section 44–22–3 is also repealed effective January 1, 1991. P.L.1985, ch. 181, art. 45, § 2.

intention clearly appears, a statute "must be applied literally by giving the words their ordinary and plain meaning." *Fruit Growers Express Co. v. Norberg*, 471 A.2d 628, 630 (R.I.1984); *see also American Hoechst Corp. v. Norberg*, 462 A.2d 369, 372 (R.I.1983); *In re Dina N.*, 455 A.2d 318, 319 (R.I.1983). This principle clearly applies to the statute now under consideration.

Section 44–22–7(6) requires the inclusion of life insurance proceeds in the estate when the insured possessed "any of the incidents of ownership" at the time of death. Like the tax administrator and the District Court before us, we shall focus on the meaning of this phrase in our review of the District Court's decision. In our review by way of certiorari we "may only inquire whether any competent evidence exists to support the trial justice's decision sustaining the tax administrator's finding." *American Hoechst Corp.*, 462 A.2d at 371.

The petitioner contends that a regulation should be required for the tax administrator to attribute incidents of ownership from the corporation to the insured. Without such a regulation, petitioner argues, respondent applied his arbitrary opinion in interpreting § 44–22–7(6) and abused his discretion.

The Federal regulation relevant to proceeds of life insurance emphasizes that "the term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense." 26 C.F.R. § 20.2042–1(c)(2) (1989). Incidents of ownership of an insurance policy are attributable to a decedent through his stock ownership if he is a sole or controlling stockholder of a corporation and the corporation is not the beneficiary of the policy. "[T]he decedent will not be deemed to be the controlling stockholder of a corporation unless, at the time of his death, he owned stock possessing more than 50 percent of the total combined voting power of the corporation." 26 C.F.R. § 20.2042–1(c)(6).

■ The District Court judge stated in her decision:

"[T]his Court does not believe that the lack of a regulation, comparable to the federal regulation, is fatal to the Administrator's position. This Court believes that the language 'any incidents of ownership' is broad enough to cover this situation."

We concur with the District Court's decision. We find that the tax administrator did not abuse his discretion in determining that the decedent possessed incidents of ownership within the meaning of the language of § 44–22–7(6).

■ What constitutes an incident of ownership is considered a question of fact. *United States v. Rhode Island Hospital Trust Co.*, 355 F.2d 7, 9–10 (1st Cir.1966). The extent of the tax administrator's power under § 44–22–7(6) is to determine whether a given set of facts results in sufficient incidents of ownership of an insurance policy to warrant inclusion in the decedent's estate. The tax administrator therefore had some discretion, but sufficient safeguards existed within the language of § 44–22–7(6) to prevent an abuse of discretion.

As the court pointed out in *Rhode Island Hospital Trust Co.*: "[T]he very phrase 'incidents of ownership' connotes something partial, minor, or even fractional in its scope." 355 F.2d at 10. "Power can be and is exercised by one possessed of less than complete legal and equitable title." *Id.* Although in the instant case the corporations had legal title to the policies, the decedent still retained incidents of ownership.

In reviewing the District Court's decision, we shall look to the insurance policies to determine what powers the decedent possessed. As a majority stockholder in both corporations, Dodenhoff was in effective control of the corporations and the policies. The revocable trust did not remove his control over the stock (although we note that an irrevocable trust would have ended that control). As the owner of the New England Mutual Life Insurance policy the decedent could have changed the beneficiary, changed the ownership of the policy, assigned the policy either absolutely

or collaterally, canceled the policy altogether, or borrowed all or part of the loan value of the policy. His powers as the owner of the National Life of Vermont policy were very similar. He could have assigned the policy, discharged or released it, changed the beneficiary, and borrowed on the policy. Like the decedent in *Rhode Island Hospital Trust Co.*, he always possessed a negative power because his signature was necessary for any of the aforementioned changes. The court in that case decided that even with this most limited power, the decedent would have been exercising an incident of ownership. *Id.* at 11. We therefore agree with the District Court that the language "any incidents of ownership" is broad enough to cover this particular situation, wherein the decedent retains significant exercisable powers over the policies.

In addition to the express terms of the policies, Federal law may be instructive in defining what constitutes "incidents of ownership." Physical possession of the policies is not needed to exercise incidents of ownership so long as a general, legal power to exercise ownership is present. *Commissioner v. Estate of Noel*, 380 U.S. 678, 684, 85 S.Ct. 1238, 1241, 14 L.Ed.2d 159, 163 (1965); *Rhode Island Hospital Trust Co.*, 355 F.2d at 11–12. In *Noel* the decedent retained the right to assign the policies or to change the beneficiary, and the Court therefore included the policy in his estate. In *Kearns v. United States*, 399 F.2d 226 (1968), the decedent's family corporation paid the premiums on the insurance policies and had physical custody of the policies at all times. The policies were carried as an asset on the company's books and financial statements. *Id.* at 228. The court held, relying on the *Noel* case, that the decedent, whatever his intention, retained key incidents of ownership as the insured of the policy because he had the power to change the beneficiary. *Id.* at 229. We also find a Wisconsin case to be helpful in defining "incidents of ownership." In *In re Estate of Laev*, 115 Wis.2d 168, 340 N.W.2d 223 (1983), the state statute requiring the inclusion of insurance in the taxable estate defined "legal incidents of ownership" as follows:

"[T]he right of the insured or the insured's estate to its economic benefits or the power of the insured to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge the policy for a loan or to obtain from the insurer a loan against the policy's surrender value." *Id.* at 174, 340 N.W.2d at 225.

In *Laev* the decedent had designated his children as beneficiaries of all his life insurance policies according to a provision made in a divorce judgment. The court conceded that a constructive trust had been imposed upon the insurance proceeds but emphasized that the imposition of the trust had not stripped the decedent of all incidents of ownership. *Id.* at 176, 340 N.W.2d at 226. The decedent did not divest himself of the power to change the beneficiaries, the right to pledge the policies for loans, or to borrow against the policies' cash-surrender value. The court pointed out that "[i]ncidents of ownership are a bundle of rights, any one of which can be exercised to beneficial advantage." *Id.* at 177, 340 N.W.2d. at 227. Since the decedent was free to exercise a great deal of power over the policies to his benefit and advantage, the court concluded that the policies were a taxable type of property within the meaning of the statute. *Id.* Dodenhoff was similarly free to exercise power over the policies to his benefit and advantage. It is clear to us, and competent evidence exists, that he retained incidents of ownership, and we therefore find that the proceeds of the life insurance policies were properly included in the estate.

■ The next issue we examine is whether there is competent evidence to support the trial judge's decision to affirm the tax administrator and disallow a deduction taken by the estate for a mortgage guaranteeing a corporate note. The District Court made a finding of fact that John and Maxine Dodenhoff executed a guaranty on a note from B & W Electronics to Fleet in the amount of $664,376.55. The guaranty was secured by equity mortgages

on various properties, including the Dodenhoff residence. There has never been a demand on the Dodenhoffs in regard to the guaranty.

The petitioner argues that § 44-22-3 allows a deduction for the amount of all mortgages on property owned by decedent. The statute provides that a taxpayer can deduct from the value of the net estate the amount of "all claims legally due and payable in the lifetime of the decedent and allowed against the estate, contingent claims which may become justly due from the estate * * * [and] the amount * * * of all unpaid mortgages."

In his argument petitioner relies heavily on *Petrarca v. Tax Administrator*, 113 R.I. 449, 322 A.2d 621 (1974). In *Petrarca* we held that the decedent was entitled to a deduction for an unpaid mortgage, notwithstanding the fact that the mortgage was paid off after the decedent's death by mortgage-redemption insurance. The mortgage was not directly paid off at the time of the decedent's death. Rather his death made the life insurance merely payable. As of the date of death the mortgage was unpaid, and therefore, a deduction was allowed. *Id.* at 456, 322 A.2d at 625.

In *Petrarca*, though, the estate was liable for the payment of the mortgage, whether the funds were obtained from insurance or any other source. In the present case the estate is not required to pay the mortgage note unless the corporation defaults. Fleet National Bank, the lender, neither sought nor received payment on the note from the decedent during his lifetime nor has it done so after his death (despite situations of delinquencies). There is no indication that the payment of the mortgage will ever become the estate's responsibility.

This case presents circumstances similar to those in *Estate of Theis v. Commissioner*, 770 F.2d 981 (11th Cir.1985). In *Theis* the estate was not primarily liable for a mortgage debt, and a deduction for the debt was disallowed. The taxpayers sought a deduction for the unpaid balance on two mortgages placed on property in which the decedents retained a life estate. "The tax court denied the taxpayers' claimed deduction on the ground that neither the decedents nor their estates would have been called upon to pay the mortgages, and on the further ground that, in any event, the decedents or their estates had a right of set-off against their children for any amounts paid on the indebtedness." *Id.* at 983. The Eleventh Circuit agreed with the tax court because "the decedents were mere accommodation parties to the notes and mortgages, and therefore, were not entitled to an estate tax deduction because they were not primarily liable for the mortgage indebtedness." *Id.*

■ In the instant case Dodenhoff was not primarily liable on the note from Fleet to B & W. There is no evidence that the estate will ever be held liable for payment on the note. A personal guaranty, such as the one in this case, cannot be claimed as a deduction pursuant to § 44-22-3. We agree with the District Court in its classification of the guaranty as "an unliquidated potential claim. * * * To allow a $664,000 deduction for a demand that may never be made or may be made in a lesser amount flies in the face of common sense." We adhere to the principle that "a claim against an estate cannot result in a deduction for estate tax purposes unless the claim is 'presented and allowed or otherwise determined as valid against an estate and actually paid or to be paid.'" *Theis*, 770 F.2d at 983 (quoting *Estate of Courtney v. Commissioner*, 62 T.C. 317, 321 (1974)). For these reasons we find that the District Court did not err in affirming the tax administrator's decision to disallow a deduction taken by the petitioner for the mortgage guaranteeing the corporate note to B & W. In the event the claim does become payable by the estate in the future, the petitioner will be able to claim a tax refund pursuant to § 44-22-24.[3] Any pos-

---

**3.** Section 44-22-24 does not apply to decedents dying on or after January 1, 1991, P.L.1985, ch. 181, art. 45, § 2, and provides as follows:

"Whenever claims shall be allowed against the estate of a decedent after the payment of taxes imposed by this chapter the general treasurer

sible inequity to the estate is therefore eliminated.

Accordingly the estate's petition for certiorari is denied, and the decision of the District Court is affirmed. The writ heretofore issued is quashed, and the papers in this case are remanded to the District Court with our decision endorsed thereon.

KELLEHER, J., did not participate.

shall * * * refund the equitable proportion of the taxes represented by the claims to the executor * * * of the estate without any further act or resolution making appropriation therefor."